**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jack P. F. GREMILLION, Defendant-Appellant.**

**No. 72–1133.**

United States Court of Appeals,
Fifth Circuit.

July 19, 1972.

Rehearing Denied Sept. 7, 1972.

F. Irvin Dymond, New Orleans, La., for defendant-appellant.

Mary Williams Cazalas, Asst. U. S. Atty., Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., Edward J. Barnes, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, CLARK and IN-GRAHAM, Circuit Judges.

CLARK, Circuit Judge:

Pack P. F. Gremillion, former Attorney General of the state of Louisiana, was convicted on a five-count indictment for committing perjury before a Federal Grand Jury which was investigating the affairs of the Louisiana Loan & Thrift Corporation (LL&T) with regard to the sale of securities. The five statements made by Gremillion before the Grand Jury on January 21, 1969 are set out *in*

*extenso* in the margin.[1] In brief, they concern whether or not Gremillion was a stockholder or owner of any economic interest in LL&T. On this appeal, Gremillion urges that the subject statements were immaterial to the Grand Jury's investigation, that the government was collaterally estopped to prosecute for perjury by his acquittal on the charges which resulted from the investigation, and that the evidence against him was insufficient. He also presses eleven points of error in trial court rulings and procedure. We affirm.

After his testimony before the Grand Jury, Gremillion was indicted, along with several others, for fraudulent sale of securities, 15 U.S.C.A. § 77q(a) (1971), mail fraud, 18 U.S.C.A. § 1341 (1966), sale of unregistered securities, 15 U.S.C.A. § 77e(a) (1971), and conspiracy to commit these crimes, 18 U.S.C.A. § 371 (1966). Gremillion was acquitted on all counts, but before that ac-quittal, the Grand Jury returned the present indictment.

Gremillion's first contention is that his statements were not material to the Grand Jury's investigation of whether or not the above listed crimes had been committed, and thus the trial court erred in not dismissing all counts of the indictment. His contention has several prongs. First he points out that he truthfully informed the Grand Jury that he was an attorney for LL&T and had received a 10,000 dollar fee for his legal services. He further testified that he had been offered LL&T stock in exchange for this work but had spurned the offer. He urges that once he had admitted this much it became immaterial whether he was an attorney or a stockholder or both and in any case, that his relationship to LL&T was immaterial.

[■] Under the perjury statute, 18 U.S.C.A. § 1621 (1966),[2] the false state-

---

1. I. "I do not nor have I ever owned stock in LL&T, even though I was asked to do so."

II. "* * * I have no economic interest in the corporation."

III. "There ain't no proxy. You are not going to find any because I didn't sign any."

IV. "Q—And would it be your testimony that that entry is completely in error then, on July 18, 1967?"

A—Why certainly, certainly.

Q—And since the time you have learned of this minute entry which is produced before the Ethics Committee, have you had occasion to talk with anybody in Louisiana Loan & Thrift or who was in Louisiana Loan & Thrift about this entry?

A—No sir, I have not. I have no reason to because it is entirely false."

V. "A—* * * I did receive a check for $700 from Mr. Glennon as a campaign contribution. The check was made out to Mr. Glennon and he endorsed it to me, and it was a campaign contribution * * *.

A—* * * Glennon endorsed it to me as a campaign contribution * * *.

Q—Mr. Glennon told you this was a campaign contribution?

A—That is what he told me. That is what I understood it to be.

Q—General, we referred earlier this morning to this check for $700 and let us show it to you now that you say was a campaign contribution.

A—That is right.

Q—It was the one of April 15, 1967, that is a copy thereof.

A—That is right.

Q—And it has the notation, "Dividend No. 1".

A—* * * that is the check that Glennon gave to me for campaign contribution, and I deposited it, yes, sir."

2. Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty

ments must be material to the matter in issue. *See* Williams v. United States, 239 F.2d 748 (5th Cir. 1957). The statements need only be material, however, to any proper matter of inquiry—not just to the main issue. United States v. Culverhouse, 436 F.2d 1068 (5th Cir. 1971). Materiality need only be established as of the time the answers were given, United States v. Stone, 429 F.2d 138 (2d Cir. 1970), and the Government has the burden of proving materiality. Brooks v. United States, 253 F.2d 362 (5th Cir. 1958). Materiality is a legal question to be decided by the court and is not an issue for the jury to determine. United States v. Edmondson, 410 F.2d 670 (5th Cir. 1969), cert. denied 396 U.S. 966, 90 S.Ct. 444, 24 L.Ed.2d 430; Barnes v. United States, 378 F.2d 646 (5th Cir. 1967), cert. denied 390 U.S. 972, 88 S.Ct. 1056, 19 L.Ed.2d 1184. The test of materiality is whether the false testimony was capable of influencing the tribunal on the issue, Barnes v. United States, *supra*, or whether the false testimony would have the natural effect or tendency to influence, impede, or dissuade the Grand Jury from pursuing its investigation. United States v. McFarland, 371 F.2d 701 (2d Cir. 1966), United States v. Marchisio, 344 F.2d 653 (2d Cir. 1965). The false statements need not actually impede the investigation. Vitello v. United States, 425 F.2d 416 (9th Cir. 1970).

With these precepts as our polestars, we examine Gremillion's contentions and hold that his false statements were material. It is patent that Gremillion's relationship to LL&T was material to the matters in issue, especially to the stock transaction counts of the first indictment. A person who is related in some financial way to a corporation is certainly more likely to be involved with the corporation's securities than one who is a stranger or a mere professional employee, because his motivation of self-enrichment would serve as a more likely impetus for that involvement. This motivation would be most enhanced in a stockholder role since a stockholder would be directly aided pecuniarily if the corporation is benefited by selling its stock. In addition, a stockholder would normally be expected to have more influence than an attorney in making the decision to offer the corporation's securities.

Gremillion's materiality attack also focuses on individual counts of the indictment. For instance, he asserts Count II should have been dismissed because "economic interest" is not of sufficiently certain meaning to sustain a charge of perjury. We disagree. In the abstract, one could speculate as to the precise parameters that phrase could connote. But the Grand Jury was not working in the abstract. It was considering the matter in the concrete context of this case, and Gremillion, as a stockholder of LL&T, knew or positively should have known that an opposite answer was required. As to Count IV, Gremillion argues that the question of whether or not he talked to anyone in LL&T was clearly immaterial. Again, after moving the inquiry back to its actual setting, we demur. The minute entry referred to in this count concerned an LL&T stockholders' meeting and reflected the fact that the 10,000 shares of stock owned by Gremillion were represented by proxy. The question was whether after learning of this entry, he spoke to anyone at LL&T about it. We find this colloquy obviously material to the question of whether or not Gremillion was a stockholder. Any reasonable man, not a stockholder, who learns he is nevertheless shown on corporate records to be a stockholder, would have inquired about the entry. In addition, part of the thrust of Count IV was whether the entry was a false entry.

of perjury and shall, except as otherwise expressly provided by law be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

For his second point, Gremillion argues that the Government is collaterally estopped to retry this case since he was tried and acquitted on the same issues in the previous trial. The issues he contends to have been previously litigated are whether or not he was a stockholder, whether he received a dividend, and whether he signed a proxy. Gremillion notes that the first indictment alleged all of these facts and maintains that they were put into issue by his plea of not guilty. He further urges that the evidence in this case was a mere replay of the first trial. Finally, Gremillion contends that the "same transaction" theory, espoused by Mr. Justice Brennan in Ashe v. Swenson, 397 U.S. 436, 448, 90 S.Ct. 1189, 1197, 25 L.Ed.2d 469 (1970), controls the application of double jeopardy in federal cases.

We reject the latter contention out of hand. Even if the Supreme Court were to incorporate the "same transaction" theory into the double jeopardy clause, that theory would be clearly inapposite here. The perjury charges did not arise out of the same transaction as did the stock and mail fraud charges. The perjury charges arose at a different time and place from any of the other charges. The "same transaction" theory obviously contemplates several criminal charges arising from a single episode that is closely circumscribed in time and space.

As to Gremillion's former contention under this point, we hold that the Government was not collaterally estopped. Under *Ashe*, the test is " 'whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration' ". 397 U.S. at 444, 90 S. Ct. at 1194. Plainly there were innumerable issues upon which the jury in the prior trial could have based its acquittal. For instance, that jury could have found that Gremillion did not utilize the mails or any instrument of transportation or communication in interstate commerce, or that he did not defraud anyone, or that he was not involved in any offer or sale of securities. In fact, the "issues" raised by Gremillion appear to be only tangentially related to the issues that would arise out of those charges upon which he was acquitted.

Gremillion's sufficiency of the evidence attack is principally based upon the dearth of evidence proving that he was a stockholder. Furthermore, he submits that as a matter of law any stock he received was void because it was received in violation of La.Const. art. 13, § 2 (1921), which proscribes stock issued without consideration and fictitious stock.[3] However, the evidence belies his principal argument. There was substantial evidence that Gremillion received the stock since the certificate was made out to him and his signature was on the back of the certificate; Gremillion's name appeared on LL&T's shareholders list; there was also substantial evidence that he received a dividend and voted his shares by proxy; and the proxy contained his signature. The latter point raised by Gremillion is an irrelevant consideration, even assuming arguendo that the stock issuance was in violation of the Louisiana Constitution. Clearly the proof showed Gremillion and LL&T were treating this stock as valid at the time he testified. He cannot choose to treat it as valid for his own beneficial purposes and lie about that existing relationship to an inquiring Grand Jury, then disavow its validity under this charge to insulate himself from the effect of his perjury. Such an approach would allow absolution where at the time of his testimony a witness may have had some arcane provision of the law in the back of his mind. The protection of the public interest in straightforward Grand Jury testimony

---

3. Corporations shall not issue stock or bonds except for labor done, or money or property actually received; and all fictitious issues of stock shall be void; and any corporation issuing such fictitious stock shall forfeit its charter.

could be destroyed by the recognition of any such theory.

The remainder of Gremillion's contentions concern alleged trial errors which he asserts individually and cumulatively resulted in an unfair trial. During opening argument, Government counsel made the following remark:

Now ladies and gentlemen, you will hear testimony that Mr. Gremillion received a loan for $42,700.00, repeat $42,700.00, from LL&T on or about November 30, 196—

Defense counsel objected but was overruled because, as Government counsel argued, this statement was relevant to whether or not Gremillion had an economic interest in LL&T. The trial court, however, in its charge stated that economic interest related to *ownership* rights in a corporation. Gremillion asserts that this change by the trial court rendered the opening statement irrelevant and prejudicial. We agree that it did and that error ensued, but we hold that this error was not so prejudicial as to affect any substantial right of the defendant. Fed.R.Crim.P. 52(a).

A worksheet was introduced into evidence showing Gremillion as a stockholder and that dividend checks were due him. However, the words "keep in Bill Glennon's name" were written in the margin. The trial judge admitted the worksheet under the Business Records Act, 28 U.S.C.A. § 1732 (1966). An issue is raised that the worksheet was not prepared in the regular course of business, but the evidence proves otherwise. Gremillion also argues that he should have been allowed to cross-examine the preparer of the worksheet. We disagree. *See* United States v. Knox, 458 F.2d 612 (5th Cir. 1972) [1972]. These records fully meet the requirements of admissibility detailed in United States v. Wilkinson, 460 F.2d 725 (5th Cir. 1972) [1972]. *See also* United States v. Hedge, 462 F.2d 220 (5th Cir. 1972) [1972]. Circumstances relating to the identity or competency of the preparer are relevant only to the weight of the evidence, not to its admissibility. Gaussen v. United Fruit Co., 412 F.2d 72 (2d Cir. 1969). Additionally, Gremillion complains of the reliability of the marginal notation in that there was no showing as to the relationship in time between the alleged decision to keep stock in Glennon's name and the entry of the marginal notation. It need only be shown, however, that the records were routinely made within a reasonable time of the transactions. It need not be proven that each individual entry was entered within a reasonable time. We see nothing to impair the reliability of these records. The main body of the records as well as the marginal notations were handwritten. There were other marginal notations beside. other names on the same list. Gremillion admits that the preparer of these records also entered the notation to which he objects. The notation was not prepared for purposes of litigation and is not otherwise self-serving. Finally, this notation could be viewed as an interoffice memo from the preparer transmitting instructions to another employee as to the preparation of dividend checks. Cf. McDaniel v. United States, 343 F.2d 785 (5th Cir. 1965).

Gremillion complains of the admission of an alleged proxy for 2,000 shares of Class B voting stock because at the time of the Grand Jury testimony he was being questioned about a proxy for 10,000 shares. Unquestionably the proof showed that he did sign the proxy for the 2000 voting shares. This is enough. Gremillion testified that he did not sign *any* proxy. Additionally, the other 8,000 shares he owned were Class A nonvoting shares as to which no proxy would be pertinent. Clearly this answer by Gremillion was intended to deny the execution of any and all proxies.

A registered mail return receipt signed by Mrs. Gremillion was admitted into evidence under the identifying testimony of an LL&T employee who mailed stock certificates to Gremillion. On cross-examination, this employee ad-

mitted that she was not positive this particular registered receipt was for the certificates, although she did know the certificates had been mailed in such a manner. Gremillion contends that this admission destroyed any probative value the evidence might have, and thus the trial court erred in not striking it. We hold that the evidence had probative value, and that the trial court did not abuse its discretion in refusing to strike it. Any discrepancies were for the jury. Cf. United States v. Poe, 462 F.2d 195 (5th Cir. 1972) [1972].

■ Gremillion next argues that the tape recording and typed recording transcription of a Board of Directors' meeting of LL&T should not have been admitted, or at least that the irrelevant and immaterial portions thereof should have been excised. He states that those portions that were arguably relevant deal only with his capacity as an attorney for LL&T and are not relevant to whether or not he was a stockholder. We do not agree that it was reversible error for the court to admit the entirety of the recording and transcription in order to permit the jury to determine the meaning of the statements. The trial court may have considered the other portions of the tape necessary to put Gremillion's statements in context. In any event, we discern no prejudice from the admission of any portion of the tape or transcript that might have been irrelevant.

■ Objection on relevancy grounds is made to testimony that Gremillion had worked on the composition of the LL&T passbook which was given to each depositor of LL&T. The Government had the burden of proving the materiality of the perjurious statements to the Grand Jury's investigation. This testimony was relevant to the Government's burden in that it cast light upon Gremillion's relationship to LL&T. In addition, the detailed extent of his intimacy with the corporate affairs would have been relevant to negate any contention that he may have been unaware of the economic interest he possessed.

With one exception, the same reasoning also adequately disposes of Gremillion's argument that a letter over the signature of William Glennon, an LL&T official, to the State Bank Commissioner was not relevant. Gremillion states that he should have been allowed to cross-examine the author of the "Glennon" letter, which dealt with the registration of LL&T. The letter was introduced through Glennon, who identified the letter and his signature thereon. Glennon testified that the letter was the joint product of several persons who were gathered with Gremillion in Gremillion's office. Some of the others present were available for cross-examination. Because of the communal nature of the document's creation, we hold Gremillion was not denied the right to cross-examine its "author".

■ In the same vein, we refuse to find the trial judge abused his discretion in permitting Glennon to testify that the pre-incorporation stock subscription list contained falsely inflated listings of stock ownership and that this listing and its falsity were known to Gremillion. The court ruled that it was admissible since it was permissible for the prosecution to show the extent of Gremillion's participation in the internal details relating to LL&T's formation. Such a ruling was consistent with the other rulings we have discussed above. Because this particular inquiry disclosed wrongful activity on the part of the defendant other than that charged in the indictment, it was properly the subject of close scrutiny. However, it was admissible evidence and the allowance of such proof was committed to the informed discretion of the trial judge. He held its probity outweighed its possible prejudice. Under the facts of the case at bar, we cannot find that this ruling was an abuse of his discretion.

Gremillion contends it was error to permit the scope of cross-examination of a witness he offered to exceed the direct examination of that witness. Without delving into the manner in which this restrictive rule of evidence would now be

applied to a witness other than the defendant himself, *see* United States v. Dillon, 436 F.2d 1093 (5th Cir. 1971), we find no merit in this assignment of error because the record makes plain that the direct examination of this witness did open both lines of inquiry as to which complaint is now raised.

Gremillion argues that two requested instructions should have been given by the trial judge. As to the first of these,[4] he contends it was required because of the asserted error, discussed above, concerning whether the proxy he denied executing was for 10,000 shares or 2000 shares. Since we have demonstrated that earlier contention was specious, the refusal of the instruction was not error.

■ The second requested instruction asserted to have been erroneously refused is set out in the margin.[5] Although stock certificates were issued in his name, he reasons that their invalidity under the Louisiana Constitution made his answers technically correct. We agree, as does the Government, that this requested instruction is a correct statement of the law. *See* United States v. Wall, 371 F.2d 398 (9th Cir. 1967); Smith v. United States, 169 F.2d 118 (6th Cir. 1948). But the refusal to give this particular instruction was not error since the remainder of the trial court's charge adequately covered the proposed instruction.

We have carefully considered all of Gremillion's allegations of error as a whole, to test their cumulative impact on the overall fairness of the trial accorded him and find that in total, as separately, they do not warrant reversal. The judgment and commitment is

Affirmed.

---

4. "A charge of perjury may not be sustained by lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different from that shown by its context."

5. "There can be no lawful conviction in a perjury case where the answers of the defendant under oath to questions propounded to him are literally accurate, technically responsive or legally truthful."