UNITED STATES of America, Plaintiff-Appellee,

v.

Betty Rae WHIMPY, Defendant-Appellant.

No. 75–2264
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

May 17, 1976.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Robert B. Thompson, Gainesville, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Gale McKenzie, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Defendant-Appellant, Betty Rae Whimpy, was convicted of perjury under 18 U.S.C.A. § 1623 in connection with false testimony which she gave in a prior criminal conspiracy trial. In this appeal Whimpy asserts three grounds of error: (i) the trial court erred in ruling as a matter of law that the statements made by the defendant in the prior conspiracy trial were material declarations, (ii) the trial court erred as a matter of law when he refused to grant a mistrial for prosecutorial misconduct in eliciting objectionable rebuttal testimony after assuring the court and opposing counsel that the testimony would be limited to another issue, (iii) the trial court erred in instructing the jury as to how they should weigh conflicting testimony. Although we find no merit in defendant's first argument we believe the Appellant's second point of error is meritorious and we do not reach the third issue.

On then with the facts relevant to the issues of this appeal. The parties stipulated

that Betty Rae Whimpy, Herman Jerry Brackett[1] and Billy Nicholson[2] were duly sworn under oath when they testified as witnesses in the prior criminal conspiracy trial.[3] Whimpy testified in that trial that on April 25, 1974, she was the girl who accompanied Brackett to the waffle house on highway 129 south of Pendergrass, Georgia on the evening of November 1, 1973. She went on to testify that she was present outside a tavern in Winder, Georgia, sitting in an automobile when Brackett and Nicholson were arrested by federal agents. Apparently, the significance of this testimony is that she went on to state that Brackett and Nicholson's conversation at their meeting at the tavern in Winder concerned an old model car Brackett wanted to buy from Nicholson rather than any matters pertinent to the liquor conspiracy prosecution.

The government, presented the testimony of four agents of the Bureau of Alcohol, Tobacco and Firearms Division which gave testimony indicating that Ms. Whimpy was not present with Brackett at the waffle house or in the car in front of the tavern but rather that the girl present was Mrs. Willard Jones who apparently had a romantic relationship with Brackett. Thus, since Brackett, Nicholson, and Whimpy allegedly falsely testified that Whimpy was the girl present at the time of these occurrences the government brought the perjury prosecution which is the subject of this appeal.

### Defendant's False Testimony Was Material As A Matter Of Law

█ Five elements must be proved to establish a case under 18 U.S.C. § 1623 for perjury: (i) the declarant must be under oath, (ii) the testimony must be given in a proceeding before a court of the United States, (iii) the witness must knowingly make, (iv) a false statement, and (v) the testimony must be material to the proof of the crime. The Defendant concedes all of the elements except the last which deals with materiality arguing that even though the statements were false they were not material to the conspiracy.

█ Proceeding on this premise we have no difficulty in holding that the statements were material to the liquor conspiracy prosecution. The case law has established very broad parameters to what is considered material and essentially anything that could influence or mislead the trial court or the jury is considered to be material. See Barnes v. United States, 5 Cir., 1967, 378 F.2d 646, cert. denied, 390 U.S. 972, 88 S.Ct. 1056, 19 L.Ed.2d 1184; see also United States v. Lardieri, 3 Cir., 1974, 497 F.2d 317; United States v. Koonce, 8 Cir., 1973, 485 F.2d 374; United States v. Parker, 7 Cir., 1957, 244 F.2d 943, cert. denied, 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48. Since the false testimony was obviously designed to negate the conspiratorial nature of the previous prosecution and in addition had the ancillary effect of confusing the facts which were to be considered by the court and the jury, we hold that the testimony of Ms. Whimpy falls within the ambit of the statute.

### Prosecutorial Misconduct

█ Prior to the testimony of Owen Strickland, an agent of the Alcohol, Tobacco and Firearm Division, which was proffered by the prosecution as rebuttal evidence, there was a conference between the court and the counsel for both parties out of the presence of the jury. Although this conference was not made a part of the

---

1. Although Brackett was designated as a defendant in this perjury trial he died before the case came to trial and therefore was not a party to this case.

2. Nicholson received a limited immunity from government prosecution for perjury arising out of the false testimony that he gave in the conspiracy trial in exchange for his testimony in this perjury trial against defendant Whimpy. See R. at 95–98.

3. The moonshine conspiracy trial which provides the backdrop for this perjury trial was conducted on August 25, 1974 in the United States District Court of Georgia, Gainesville division. The case number was 74–12–G and the style of the case was United States v. Boswell, et al.

record it is obvious from the statements in the record of the court and counsel that the Assistant United States Attorney, as prosecutor, mislead both the court and opposing counsel as to the content of Strickland's testimony. It was the understanding of the court and the parties that this testimony would only relate to Brackett's residence but instead the prosecutor either led or allowed the witness to stray into an area which was unquestionably prejudicial to the defendant's case. Agent Strickland testified that he had had two conversations with Brackett in which Brackett had told him[4] that in the liquor conspiracy trial he had told the same lie as the two girls had told in that trial.[5]

Unquestionably, the statements by Strickland implicated the defendant and their effect could not be erased by the Judge instructing the jury to disregard agent Strickland's testimony. We refuse to countenance the conduct of the prosecutor in not only proffering testimony well beyond the scope of legitimate rebuttal, *see, e. g., United States v. Sadler*, 5 Cir., 1974, 488 F.2d 434, but also conducting the rebuttal examination in a way which was in direct conflict with the ruling of the court.[6] To

4. Agent Strickland's testimony bears the earmarks of hearsay for it concerned a statement made by an out-of-court declarant and the statement was offered to show the truth of the matters asserted therein and thus its value rested upon the credibility of the out-of-court declarant. *See* McCormick on Evidence § 246 at 584 (2d ed. 1972); *see also* Fed.R.Ev.Rule 801(c). However, since the defense counsel made no objection to the admission of the evidence on this basis we need not confront the ever tedious legal problems in determining whether this evidence was hearsay, and if so, whether it fell within the ambit of any of the hearsay exceptions. *See* Fed.R.Ev.Rule 803, 804.

5. In response to the prosecutor's questions agent Strickland testified as follows:

BY MISS McKENZIE:

Q  Mr. Strickland, how are you employed?

A  U. S. Treasury Department, Special Agent, Alcohol, Tobacco, and Firearms.

Q  On December the 14th, 1974, did you have an occasion to be a party to a conversation with Herman Jerry Brackett concerning perjury?

A  Yes, ma'am.

Q  All right. What was the gist of that conversation, please, sir?

*  *  *  *  *  *

A  He was talking to someone I was with and he was talking about his trial. I said, "What are they going to try you for?" and he said "Perjury." I said, "What is perjury?" he said, "Well, there was nine of us in a case. Two of us beat the case." He said, "And they proved that two of the girls told a lie" and he said that "since I told the same lie, they are going to try me for it."

Q  Anything else said?

A  Well, I asked him—I said, "Where do these girls live?" He said, "Here." I said, "Are they on your side or the Government's side?" He said, "They are on mine."

Q  On January the 7th, 1975, did you have any further conversation with the defendant Herman Jerry Brackett?

A  Yes, ma'am.

Q  What was that conversation?

A  Well, on the 7th I brought it up. On December the 14th he brought it up. On the 7th, I brought it up. And I asked him about his trial, had he been tried yet. He said, "No." I said, "Well, I just can't understand it." He said, "Well, the Government was going to try to prove that a girl lied and that he told the same lie."

Q  What did you say at this time?

A  I said, "Well, you beat the case. Does it look like they will get her instead of you?"

Q  And what was his response to that?

A  He said, "Well, if they prove she lied, they have me because they both told the same thing."

MISS McKENZIE: Thank you.

The harm was further compounded on cross-examination:

BY MR. THOMPSON:

Q  When was this first conversation, Mr. Strickland?

A  On December the 14th.

Q  December the 14th?

A  Yes, sir.

Q  He said that there were two girls that testified in the other case and that they both lied?

A  No, sir, I don't believe I said he said that.

Q  What did you say?

A  Well, he said he was going to be tried for perjury and he guessed he was going to have to make some time. And I said, "What did they get you for?" and he said "Perjury." I said, "Well, what's that?" He said, "Well,—" I said, "What they get you for?" He said "Well, there was nine of us. Two of us beat the case and what they have me on is I told the same lie as the two girls told and they proved that they told a lie so they are going to try to—"

6. It is clearly improper for the prosecuting attorney to ask questions eliciting facts and evi-

allow government prosecutors to act in disregard of understandings and agreements with opposing counsel and the court would create an atmosphere of distrust which would impede the criminal trial process and is fundamentally in conflict with the concept of our vaunted adversary system.

Although the trial court unequivocally instructed the jury to disregard agent Strickland's testimony, R. at 254, we feel that under the circumstances this was inescapably insufficient so the only proper remedy was for the trial court to grant defendant's motion for mistrial. *See* R. at 245–250. Moreover, we believe that the defendant adequately preserved his error for appeal by making motion for mistrial outside the presence of the jury rather than objecting immediately to the harmful testimony. An immediate objection under the circumstances would only serve to accentuate the harmful testimony. Upon this record, there is no doubt that defendant's timely motion for mistrial placed the matter squarely before the trial court for resolution at the earliest possible time which was tactically appropriate.

REVERSED.

dence which are inadmissible and prejudicial. *See e. g. Chavez v. United States*, 10 Cir., 1958, 258 F.2d 816; *United States v. Remington*, 2 Cir., 1951, 191 F.2d 246.