UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank CRIPPEN, Defendant-Appellant.

No. 76–4486.

United States Court of Appeals,
Fifth Circuit.

March 30, 1978.

**536**

William G. Earle, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Jamie L. Whitten, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, HILL and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The defendant was convicted on two counts of perjury after a fair trial at which a careful trial judge ruled correctly on the issues sought to be raised as grounds for his acquittal, or, alternatively, dismissal or for a new trial. Our conclusion that the trial court should be affirmed was reached after full study of each of the several issues raised.

### I.

Frank Crippen, a businessman living in Miami, Florida, was the owner of an automobile agency, Crippen Oldsmobile. In March, 1975, a grand jury was investigating whether this firm had violated the Disclosure of Automobile Information Law, 15 U.S.C. § 1233, which makes it a misdemeanor to remove a manufacturer's price sticker from a new car or to alter the original sticker. Crippen testified before the grand jury, as did one Paul LaChance, a mechanic whose skills included the ability to turn back automobile odometers. LaChance had never been an employee of Crippen Oldsmobile but had, from time to time, done work for the company. He denied that this work included turning back odometers.

Crippen testified that turning back odometers once was a common practice in the industry and that his firm had done so routinely in 1972 and before then. But, he said, when a federal law was passed making it a civil offense to turn back odometers, he issued a directive prohibiting it.[1] He was examined about events that occurred thereafter, and he gave answers that later resulted in three counts of the indictment against him.

Later, faced with a charge of false swearing, LaChance recanted. He furnished evidence that resulted in several charges against Crippen and received a promise of immunity. Crippen was indicted on three counts of false swearing in violation of 18 U.S.C. § 1623 (Counts I, II and III), two counts of obstruction of justice for allegedly trying to influence LaChance's testimony (Counts IV and V), and one substantive count charging the removal of a manufacturer's price sticker, a misdemeanor under 15 U.S.C. § 1233 (Count VI). The false swearing counts were based on the following testimony before the grand jury:

Count I: Q. Are you aware of any cars being sold by Crippen Oldsmobile in 1974 that had odometers turned back.
A. No, I am not.

Count II: Q. Mr. Crippen at any time in the year 1974 did you ever order or request anyone to turn back an odometer at Crippen Oldsmobile?

---

1. This was the result of the passage of The Motor Vehicle Information and Cost Saving Act, 15 U.S.C. § 1984, on October 20, 1972. The statute became effective 90 days later.

A. No, I did not.

Count III: Q. At any time in 1974 did Paul La Chance while working on the premises of Crippen Oldsmobile here in Miami turn back an odometer.

A. No, not that I know of.

At Crippen's trial, LaChance related that he had turned back about 17 odometers at Crippen Oldsmobile in 1974, and that he received his instructions from the manager, Don Coates, not from Crippen. He testified, however, to events from which the jury might have concluded that Crippen knew what was going on, and, on at least one occasion, directed the manager to reduce the mileage registered on an automobile by half.

There was considerable other testimony against the defendant, and direct, as well as character, testimony on his behalf. He also testified in his own defense.

During the course of the jury's deliberations, it sent the following question to the trial judge:

Count No. I states, 'Q: Are you aware' [meaning now]. If it were a question, 'Were you aware,' [meaning in 1974] it would make all the difference. Can we have reasonable doubt about the defendant's cognizance of the question or do we accept literally?

The trial judge responded: "I cannot answer this question for you. You will have to decide based upon the indictment, the evidence, and the law as given in the Court's instructions."

The trial judge directed a verdict of not guilty on Count VI at the close of the government's case.

The jury acquitted Crippen on Count II (a false swearing count), and Counts IV and V (obstruction of justice), but found him guilty on two false swearing counts, Counts I and III.

II.

■ The essence of the crime of false swearing is the defendant's knowledge at the time of his testimony that it is untrue. *United States v. Whimpy,* 5 Cir. 1976, 531 F.2d 768. "[T]he perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston v. United States,* 409 U.S. 352, 361, 93 S.Ct. 595, 601, 34 L.Ed.2d 568.

■ The petitioner argues that the question on which Count I was based was not precise enough to be the basis for a charge of false testimony. That the jury asked the question it did makes the argument plausible, even though this issue came belatedly, on appeal, to the defendant's mind, and was never raised in the trial court. *See, United States v. Chapin,* 1975, 169 U.S.App.D.C. 303, 311, 515 F.2d 1274, 1282, where the same post-conviction scrutiny of the record for possible flaws resulted in the same belated and rejected argument.

But, considered in the context of the entire examination of the defendant, the question was clear and unambiguous. The grand jury was investigating what had happened in the past, and Crippen was being interrogated about his present knowledge of those past events. That the petit jury thought of a possible ambiguity, which it evidently later resolved beyond reasonable doubt, is not sufficient to impugn the question.[2] Words clear on their face can be interpreted in various ways when "subjected to ingenious scrutiny after the fact." *United States v. Chapin,* 1975, 169 U.S.App. D.C. 303, 308, 515 F.2d 1274, 1279. The words used were to be understood in their common sense, not as they might be warped by sophistry or twisted in pilpul. The question was clear enough to be answered cate-

---

2. Crippen himself testified. He never suggested that the question was not clear. He confirmed that the answer he gave was truthful. He testified in response to at least one question in the present tense about past events, *e. g.,* "Do you know whether or not that happened?" "No, I do not." (Transcript, p. 795)

gorically by the defendant and to serve as a basis for the jury's verdict. *Compare, United States v. Brumley,* 5 Cir. 1977, 560 F.2d 1268, where we found: "[T]his attempted foundation for a perjury prosecution fails for lack of specificity, for lack of the critical question, and for lack of the unequivocal answer." 560 F.2d at 1277.

■ The jury was properly instructed on the government's burden of proof beyond reasonable doubt, the essential elements of the offense, and the necessity of proof not only that the answer given was false but also that the defendant made the false declaration knowingly. The trial judge properly added a caution against finding the defendant guilty merely because he gave incorrect testimony because of "surprise, confusion, haste, inadvertence, honest mistake as to facts, carelessness or negligence." Hence, we conclude that the question was clear enough to support the charge, and the evidence was adequate to support the verdict as to Count I.[3]

### III.

■ The defendant called a number of eminent people as character witnesses, While the testimony of each was slightly different, the first, a Roman Catholic Sister who was president of a college on whose board Crippen sat, was typical. She said Crippen's reputation for truth and veracity was good. He was regarded with great trust. He was regarded by "all of us" as "honest and sincere" in his efforts. On cross-examination, the prosecutor asked the witness whether her opinion would be the same had she known that, in the past, the defendant had authorized turning back odometers on automobiles before selling them. The defendant objected, and the court overruled the objection. This witness said her opinion would be affected by that knowledge.

A similar procedure was followed with each character witness. Some testified that their high opinion of the defendant would not change; others were uncertain.

The court properly charged the jury that turning back odometers was not a criminal offense at the time the defendant admitted that this was done, and the evidence should be considered only in connection with the evidence concerning the defendant's reputation for truthfulness and veracity.

The evidence was obviously relevant to those issues raised by the defendant himself. Even if it was not a criminal offense to alter odometers, and even if automobile dealers had widely engaged in the practice, the only purpose of doing so would have been to deceive the buyer of a car into thinking that it had been operated for less mileage than it had, in fact, been. The jury might believe, as some of the character witnesses did, that honest dealers do not deceive their customers. Or the jury might have believed that this was consistent with high repute because it was so widely engaged in by automobile dealers. The evidence was relevant; its probative value was for the jury.

In a recorded colloquy with counsel, the trial judge made certain that there was a factual basis for the attempted impeachment, as there was in the defendant's own statements to the grand jury in the four pages of the transcript then admitted. He carefully examined Rule 608(b) of the Federal Rules of Evidence, and concluded the evidence was admissible. He was correct. That Rule states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. . . .

---

3. No similar issue is raised as to Count III.

This court has recently affirmed the admissibility of such evidence. In *United States v. Bynum*, 5 Cir. 1978, 566 F.2d 914, p. 919, we said:

> Once a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is inconsistent with the witness' direct testimony . . . Courts have imposed two important limitations upon judicial discretion in admitting inquiries concerning such prior misconduct: first, a requirement that the prosecution have some good faith factual basis for the incidents inquired about [Citations omitted] and second, a requirement that the incidents inquired about are relevant to the character traits involved at the trial.

*See also*, the discussion of the subject in Weinstein and Berger, Weinstein's Evidence, Vol. 3, § 608[06] and § 608[05], pp. 26–8, notes 20, 21, 26 (discussion of what forms of conduct are relevant to truthfulness and veracity). The rule is, of course, consistent with the principle previously applied in *Michelson v. United States*, 1948, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168.

The evidence was not unduly prejudicial, particularly in the light of the court's instruction to the jury. It evidently did not paint the defendant with a tar brush, for the court directed a verdict for him on one count and the jury acquitted him of the charges contained in two of the four counts submitted to them. *Compare, United States v. Abrams*, 5 Cir. 1978, 568 F.2d 411.

■ The allegedly false statements before the grand jury were clearly material to its investigation. The offense being investigated was removing the original stickers from automobiles and later selling them after substituting different price stickers. If an automobile was to be used as a demonstrator, the original sticker would be removed. If it were later to be sold as new, with a substitute price sticker, any buyer who looked at the odometer would at once perceive that the car was used. Hence, alteration of odometers, even if it was neither a criminal act nor a civil offense,[4] was essential to the success of the suspected plan.

■ The issue of materiality is for the court to determine, as it correctly did. *United States v. Gremillion*, 5 Cir. 1972, 464 F.2d 901.[5] *See also, United States v. Abrams, supra; United States v. Damato*, 5 Cir. 1977, 554 F.2d 1371; *United States v. Brumley*, 5 Cir. 1977, 560 F.2d 1268, 1277; *United States v. Whimpy*, 5 Cir. 1976, 531 F.2d 768, 770. *Compare, United States v. Lasater*, 8 Cir. 1976, 535 F.2d 1041.

■ As we pointed out, in *United States v. Damato*, 5 Cir. 1977, 554 F.2d 1371 (in which we found the testimony not to be material), the government may meet its burden of proving materiality by introducing the transcript of the prior proceedings, as it did here. The trial judge found that the statements were material and then correctly instructed the jury on this issue.

The other contentions of the defendant, that the evidence was insufficient to sustain the conviction, and that the government failed to prove each element of the crime beyond reasonable doubt, are without merit.

For these reasons, the conviction is AFFIRMED.

---

4. Title IV of the Motor Vehicle Information and Cost Saving Act, 15 U.S.C. §§ 1981–1991, deals with odometers. Section 1984, enacted October 20, 1972, makes turning back odometers a civil offense; Section 1989 creates a private right to sue for damages. Section 1990c, enacted July 14, 1976, makes turning back, or otherwise tampering with, odometers a criminal offense.

5. That case contains a complete statement of the nature of his offense, the test of materiality, and burden of proof. *See*, 464 F.2d at 905. *See also*, Annotation, 22 A.L.R. Fed. 379.