UNITED STATES of America,

v.

Patricia Jewel JOSEPH.

No. 87–0005 CR.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 27, 1987.

Eileen O'Connor, Ass't. U.S. Atty., Leon Kellner, U.S. Atty., Miami, Fla., for U.S.

Howard Sohn, Miami, Fla., for defendant.

## MEMORANDUM OPINION

SCOTT, District Judge.

Defendant, PATRICIA JEWEL JOSEPH, is charged with a single violation of 18 U.S.C. 1623 for an alleged false declaration before a United States Magistrate during a pre-trial detention hearing. The indictment alleges that PATRICIA JEWEL JOSEPH testified falsely at the hearing as follows:

Q. Mrs. Joseph, the house that you and your husband live at in West Hollywood, how long have you had that house?

A. About three and one-half years.

\*　　\*　　\*　　\*　　\*　　\*

Q. And you oversaw the building of that house?

A. Me, along with the contractor.

Q. Okay. And it's your testimony that the house is worth $75,000?

A. *About 75, yes.*

The indictment further alleges "... that PATRICIA JEWEL JOSEPH then and there well knew and believed that the home was worth in excess of $125,000." The parties agreed to waive jury and try this case before the Court.

## I.

The basic facts are not in dispute. At the detention hearing, PATRICIA JEWEL JOSEPH was called as a witness for her husband who the government sought to detain. Her husband's attorney made a proffer that MRS. JOSEPH would testify that the value of the Joseph's home was approximately $75,000.00. The Government then opted to cross-examine PATRICIA JEWEL JOSEPH. The transcript reveals the following:

Q. Mrs. Joseph, the house that you and your husband live at in West Hollywood, how long have you had the house?

A. About three and a half years.

Q. That house was built?

A. Yes, it was.

Q. And it was built—you have to speak into the microphone, okay?—and that house was built after your husband was convicted on cocaine charges, correct?

A. No, before.

Q. That house was built while your husband was incarcerated on the cocaine charges was it not?

A. Well, the construction started before he was incarcerated.

Q. Okay. And it continued while he was incarcerated, correct?

A. Yes, it did.

Q. And it continued while he was on work release, correct?

A. Yes.

Q. And you oversaw the building of that home?

A. Me, along with the contractor.

Q. Okay. And it's your testimony that that house is worth $75,000.00.

A. About 75, yes.

Q. Isn't it fair to say that the house is worth—strike that.

In contradiction to PATRICIA JEWEL JOSEPH's testimony that the house was worth "about $75,000", the Government offered evidence that: (a) the construction price was $250,000, paid in cash by RICHARD and PATRICIA JOSEPH, plus there were improvements valued at an additional $25,000 to $50,000; (b) the 1985 tax assessment was $125,000; and (c) the Defendant insured the value of the home for $200,000. PATRICIA JEWEL JOSEPH responds arguing that the value of the home is merely a matter of opinion which cannot constitute a basis for perjury but in any case, the Defendant denies that she made a false statement.

## II.

 There is no crime in false swearing unless the Defendant's answer about a material fact was knowingly false. *United States v. Crippen,* 570 F.2d 535 (5th Cir. 1978); and *United States v. Whimpy,* 531 F.2d 768 (5th Cir.1976). A false answer given because of inadvertence, honest mistake, carelessness, neglect or misunderstanding does not constitute the crime. *United States v. Kehoe,* 562 F.2d 65, 69 (1st Cir.1977). Except for the issue of materiality,[1] the burden, as it does is all criminal cases, rests upon the government to prove the alleged false statement beyond a reasonable doubt.[2]

## III.

 In the present case, PATRICIA JEWEL JOSEPH testified that her opinion on the value of the house was based upon several reasons: First, the home was located in a predominately poor, ethnic neighborhood where the actual cost of the home could not be recouped. The JOSEPHS' de-

---

1. Materiality is a matter of law for the Court, and was accordingly decided by the Court. *United States v. Gremillion,* 464 F.2d 901, 905, (5th Cir.1972).

2. Three elements are essential to prove the crime: (1) the Defendant in fact made the particular statements in a court proceeding; (2) the

Defendant knew the statements to be false when they were made; and (3) that the statements were material in a court proceeding. 28 U.S.C. § 1623; *United States v. Haimowitz,* 725 F.2d 1561, 1580–81 (11th Cir.1984); and, *United States v. Cosby,* 601 F.2d 754, 756 (5th Cir.1979).

cision to build at that site was against the advice of the contractor who had urged that the home be located in a better neighborhood where the actual cost be realized if it was eventually sold. Notwithstanding this advice, the JOSEPHS built the home in the poorer neighborhood because it was close to their families and they did not intend to move. Second, PATRICIA JEWEL JOSEPH explained that when she offered the opinion of $75,000, she was opining in the context of what she could immediately pledge as collateral to a bondsman. Since she could not recoup the actual cost in light of its location, JOSEPH believed the $75,000 figure would be the real value for immediate sale to a prospective buyer. In this manner, MRS. JOSEPH arrived at the substantially lower figure. Lastly, the Defendant added that she was well aware that lying at a bond hearing would not help her husband and that the Government knew about the home. The Government can point to no other aspect of her testimony where there was a hint of untruthfulness.

### IV.

While imaginative hindsight can not save a defendant who has testified falsely, it is equally true that an honest mistake, carelessness or inadvertence does not make the crime of false swearing. *United States v. Martellano*, 675 F.2d 940 (7th Cir.1982); and, *United States v. Crippen*, 570 F.2d 535 (5th Cir.1978).

In the present case, there exists a reasonable doubt as to the untruthfulness of the answer. *See, e.g., Dale v. Bartels*, 552 F.Supp. 1253, 1266 (S.D.NY 1982). ("Mistaken conclusion or unjustified inferences testified to negligently, or even recklessly, are not a crime.") This is especially true, where, as here, "The one lone question for which the Defendant stands (charged) of answering falsely had some of the elements of a trap ..." *United States v. Martellano*, supra, at 945.

**3.** "Since the prosecutor chose to leave the record in an equivocal condition, it cannot be the basis of a false swearing conviction." *Unit-*

The Court notes with great interest that immediately upon asking the pivotal question and obtaining the $75,000 answer, the skillful prosecutor commenced to ask a follow-up question, "Isn't it fair to say the house is worth", and then withdrew it saying, "strike that." Obviously, aware that she had caged the quarry, the prosecutor had no intention of letting the Defendant spring the trap.[3]

### V.

Accordingly, while the Government has presented a good prima facie case, this Court feels that a reasonable doubt exists, and, therefore, acquits the Defendant, PATRICIA JEWEL JOSEPH, of the crime of false swearing. It is therefore

ORDERED and ADJUDGED that the Defendant be discharged to go hence without day for return and exonerated of bond, if any, as to the Count(s) hereinabove specified only, otherwise the bond shall remain in full force and effect.

*ed States v. Tonelli*, 577 F.2d 194, 200 (3rd Cir.1978).