**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sandra HERNANDEZ, a/k/a "Cha Cha," Ronnie Lee Tape, Karen McCalvin, Rodney Gilmore, Rickey Rogers, Defendants–Appellants.**

No. 89–3395.

United States Court of Appeals, Eleventh Circuit.

Jan. 30, 1991.

Arthur Addess, Tampa, Fla., for Hernandez.

David Weisbrod, Tampa, Fla., for Tape.

Julianne Holt, Tampa, Fla., for McCalvin.

Kim Munch, Tampa, Fla., for Gilmore.

Mark Bryan, Clearwater, Fla., for Rodgers.

Douglas Frazier, Asst. U.S. Atty., Fort Myers, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and GODBOLD, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

## BACKGROUND

Five appellants bring an array of appeals from their convictions resulting from a drug selling operation. They contend that procedural and constitutional errors by the trial court deprived them of a fair trial. We disagree and affirm on all issues.

Ronnie Lee Tape led the drug operation. He began selling cocaine in Fort Myers, Florida in 1979. He later lived with Sandra Hernandez, who assisted in buying and selling cocaine. Karen McCalvin and Rodney Gilmore helped prepare and package crack cocaine for sale; they also sold it for Tape as did a number of other street distributors. Tape paid his distributors handsomely, up to $2,500 a week by 1985, and individual sellers brought in up to $20,000 a day for Tape from drug sales.

In addition to these activities, Tape had invested money in a musical band and various properties, including a nightclub called Phase II. Gilmore worked for the band and travelled with the band members to California. Tape sent Gilmore several large payments via Western Union, which eventually were deposited into a bank account in Los Angeles in the band's name. Ricky Rogers managed the Phase II nightclub and oversaw its renovation. Tape had access to the club's bank account and ordered some of the renovations. Rogers's testimony before the grand jury concerning the purchase and renovation of the club was the subject of the perjury count of the indictment.

Agent Boyer of the Internal Revenue Service participated in the investigation of Tape. Boyer fortuitously encountered Tape at a toy store in Fort Myers in January 1988. Their encounter was the basis of the assault count.

When police arrested Gilmore in May 1988, they searched his truck and seized a .44 Magnum pistol from under the passenger seat.

The government's final indictment is summarized as follows:

Count 1: Tape: Engaging in a continuing criminal enterprise. 21 U.S.C. § 848.

Count 2: Tape, Hernandez, McCalvin, Gilmore and others not appealing: Conspiracy to possess with intent to distribute cocaine hydrochloride and 50 grams or

more of a mixture or substance containing cocaine base. 21 U.S.C. § 846.

Counts 3, 4, 5, 6: Tape and others not appealing: Unlawful distribution of more than 50 grams of cocaine base. 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2.

Count 7: Tape, Hernandez, Rogers, McCalvin, Gilmore and others not appealing: Conspiracy to defraud the United States by impeding the lawful functions of the Internal Revenue Service. 18 U.S.C. § 371.

Count 8: Rogers: False declarations before grand jury or court (perjury). 18 U.S.C. § 1623.

Count 9: Tape: Forcible assault of a federal officer. 18 U.S.C. § 111.

After a jury trial, the jury returned a verdict of guilty on all counts. The trial judge sentenced the defendants to various prison terms in accordance with the federal sentencing guidelines.

## PROSECUTION COMMENTS

 Appellant McCalvin was convicted of conspiracy to possess with intent to distribute cocaine hydrochloride (Count 2) and conspiracy to defraud the IRS (Count 7). McCalvin argues that the prosecutor's summation statements impermissibly vouched for the veracity of the government's witnesses. *United States v. Sims*, 719 F.2d 375, 377 (11th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). It is improper for the prosecution to place the prestige of the government behind a witness by making explicit personal assurances of the witness's veracity or by indicating that information not presented to the jury supports the testimony. *Id.* Our standard of review of the prosecution comments in this case is plain error because defense counsel did not object to them at trial. *United States v. Eley*, 723 F.2d 1522, 1525–26 (11th Cir.1984).

Appellant McCalvin argues that the prosecutor repeatedly vouched for the credibility of government witnesses during closing argument and rebuttal.[1] None of these comments amount to explicit personal assurances or references to evidence not before the jury. The prosecutor may not vouch for witnesses but may still "argue that the fair inference from the facts presented is that a witness had no reason to lie." *Eley*, 723 F.2d at 1526 (quoting *United States v. Bright*, 630 F.2d 804, 824 (5th Cir.1980))[2]. The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case; rather, it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury. Here the remarks were designed to refer the jury to evidence in the case that was favorable to the government. They did not amount to an explicit, personal guarantee of credibility, such as assuring the jury that the prosecution would not have brought the case unless the defendant was actually guilty. *See Eley*, 723 F.2d at 1526. The most troubling comment was # 6, fn. 1 *supra*, which seems to refer to

---

**1.** The prosecutor's statements are:

1) "And I submit to you it's impossible to lie. It would have been impossible for those defendants with their educational background, their street background, where they came from, to be able to carry on a charade for that long a period of time about those many things."

2) "He told you some stories that he couldn't have made up."

3) "The best we can hear is that Mr. Givens—I don't believe that—that they cut a tape, there was a demo tape and his testimony was somewhat murky...."

4) "I think not."

5) "That was right and Ricky Rogers didn't tell the truth."

6) "I'm the person within the course of the Rules of Evidence that had to determine what evidence I felt supported the charges from the Government's position in this case."

7) "Ladies and gentlemen, I don't know where that came from.... And I don't know where the idea came that you only sell kilos of cocaine and not packages. I thought we heard testimony throughout his entire trial about selling packs of cocaine...."

8) "I'll tell you what differentiates Mr. Troupe and the other people who were not charged with anything who happened to pick some money up from these defendants."

**2.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

internal processes of the prosecutor's office, not to specific evidence. Although it may have been error to allow such a comment before the jury, it was not plain error because the prosecutor did not vouch for any particular piece of evidence but was instead apologizing for the overall volume of the evidence in the trial. Furthermore, whatever vouching there may have been was diminished when the trial judge warned the jury before closing argument that it was free to reject the prosecution's inferences from the evidence. The judge also stated in final jury instructions that the government was entitled to no greater consideration than is accorded any other party. *Cf. Sims,* 719 F.2d at 378 (trial judge cautioned that testimony given pursuant to immunity agreement should be scrutinized with great care). That the judge did not attempt further restrictions on the prosecutor's summation and rebuttal does not amount to plain error.

## SUFFICIENCY OF THE EVIDENCE

 For each of the following three issues, we review the evidence in the light most favorable to the government to determine if a reasonable jury could find proof of guilt beyond a reasonable doubt. *United States v. Lopez,* 898 F.2d 1505, 1509 (11th Cir.1990). The evidence may be sufficient even if it does not exclude every reasonable hypothesis of innocence. *Id.*

**Perjury:** Appellant Rogers was convicted of perjury (Count 8) for statements made to the grand jury.

 The statements in dispute occurred during questioning to determine whether Tape exercised any control or had any role in purchasing and renovating the Phase II nightclub.[3] Although in the grand jury statements Rogers denied Tape helped him finance or gave him money to renovate the club, Rogers admitted at trial that Tape had "advanced" him more than $15,000 to purchase work and materials for the club,

which he repaid. Rogers claims the grand jury statements are literally true and negate the perjury requirement that false statements be given knowingly. *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973); *United States v. Petzold,* 788 F.2d 1478, 1482–84 (11th Cir.1986); *United States v. Corbin,* 734 F.2d 643, 653 (11th Cir.1984); *United States v. Abrams,* 568 F.2d 411, 422 (5th Cir.), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) (no perjury when a witness "gives an evasive, nonresponsive but literally true answer, even if the answer is intentionally misleading and arguably false by negative implication."). First, Rogers argues Tape never *financed* the purchases because he never charged interest for Rogers's use of the money. Second, he argues Tape never *gave* him money for the purchases because the money was not a gift and Rogers repaid Tape in full. Rogers contends this was his understanding during questioning.

 Whether the statements were literally true is determined by the context of the questioning. *United States v. Cuesta,* 597 F.2d 903, 920 (5th Cir.1979), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979); *United States v. Crippen,* 570 F.2d 535, 537 (5th Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). A defendant does not escape perjury "simply because the defendant can postulate unstated premises of the question that would make his answer literally true." *Cuesta,* 597 F.2d at 920; *see Crippen,* 570 F.2d at 537 ("The words used were to be understood in their common sense, not as they might be warped by sophistry or twisted in pilpul.").

In this case, the thrust of the questioning was to discover if Tape had transferred money to Rogers to renovate the club. The terms of the transaction—be it a loan, a donation or an advance—were immaterial and did not arise in the questioning. Fur-

---

**3.** Rogers' statements were:

Q: "He [Tape] didn't help you finance any of these renovations?"
A: "No."
Q: "Not before and not after?"
A: "Not before and not ever."
Q: "Did he ever have anyone, not just himself, give you money?"
A: "Nobody never gave me one dime."

thermore, Rogers testified at another point in the grand jury inquiry that Tape was not the source of any money for renovations. Finally, Rogers himself used the verb "give" twice at trial to describe his return of the money to Tape.[4] This indicates that he understood the transaction to be a simple money transfer. *Cf. United States v. Williams*, 552 F.2d 226, 229 (8th Cir.1977) (defendant's attempt to distinguish between "lien" and "liens" contained in a prosecutor's question not sufficient to reverse perjury conviction because defendant himself used the terms interchangeably in other trial testimony).

Although the questions here could have been more precise, they were sufficiently clear for a jury to conclude that Rogers was guilty of perjury. *See United States v. Caucci*, 635 F.2d 441, 445 (5th Cir. Unit B), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 108 (1981).[5] We conclude that Rogers almost certainly meant to deny that money passed from Tape to himself, not to deny more particular meanings of "give" and "finance." Thus, given the remaining evidence in the case, his statements were not literally true and were sufficient to uphold a perjury conviction.

**Conspiracy:** Appellants Rogers and Gilmore were convicted of conspiracy to defraud the United States by impeding the functions of the Internal Revenue Service (Count 7).

■ To sustain a conspiracy conviction, "there must be proof of an agreement among two or more persons to accomplish something that constitutes an offense against the United States and an overt act by one of them in furtherance of that agreement." *United States v. Burton*, 871 F.2d 1566, 1571 (11th Cir.1989) (citing cases). The government must prove "that a conspiracy existed, that appellant knew of it and that he intended to associate him-

self with the objectives of the conspiracy." *United States v. Hollifield*, 870 F.2d 574, 577 (11th Cir.1989) (*citing United States v. Corley*, 824 F.2d 931, 936 (11th Cir.1987)). Because secrecy is an essential element of conspiracy, "such an agreement may be proved by circumstantial as well as direct evidence." *Burton*, 871 F.2d at 1571 (*quoting United States v. Browning*, 723 F.2d 1544, 1546 (11th Cir.1984)).

■ The government contends that both Rogers and Gilmore laundered Tape's drug money, thereby conspiring to prevent the IRS from collecting income taxes on it. There is sufficient evidence to support both convictions.

Gilmore prepared and distributed drugs for Tape, which was the basis of the conviction of conspiracy to possess with intent to distribute crack cocaine that was not appealed. Tape sent Gilmore money orders totalling $67,000 in 1985 and $70,000 in 1986, which were ultimately deposited into Tape's business account set up in the bands's name in a Los Angeles bank. Gilmore contends that the receipt of the money orders was not illegal and that he thought they were being used for expenses incurred by the band, which employed Gilmore as a sound and light engineer and which Tape financed. This circuit has been reluctant to hold that merely concealing or disguising the source of money is sufficient to support a conviction of conspiracy to obstruct the IRS. *See United States v. Montalvo*, 820 F.2d 686, 689 (5th Cir.1987) (*citing United States v. Browning*, 723 F.2d 1544 (11th Cir.1984)); *United States v. Enstam*, 622 F.2d 857 (5th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981)). Viewing the evidence in the light most favorable to the government, however, a reasonable jury could conclude that Gilmore was active in

---

**4.** "I reimbursed every money that I gave him. I gave it back to him. It wasn't no finance." R13–79.

. . . .

"He didn't give me no money. Giving is something—somebody that going to give you something, you don't get anything back from him. But I—when he—he—you know, you

know, he advance me the money, I give it back to him." R13–79, 80.

**5.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

the drug ring and voluntarily received and processed the payments in order to participate in a scheme to avoid paying taxes.

As for Rogers, the government offered evidence that Tape was the actual owner of the Phase II nightclub, but that Rogers conducted business as the nominal owner in an attempt to hide Tape's use of drug proceeds to run the club. In particular, Rogers attended a meeting in fall 1987 with Tape and a lawyer at which Tape voiced concern about the tax implications of putting ownership of the club in his own name.[6] Tape oversaw the renovations and directed Rogers to write checks to a contractor for work on the club. This evidence supports, at least circumstantially, Rogers's awareness of and voluntary involvement in Tape's efforts to avoid reporting income taxes.

The evidence of conspiracy in both these cases is far from overwhelming. There is no evidence of particular or explicit agreements with Tape to conceal money from the IRS. However, the determination of the strength of the evidence and the credibility of the witnesses is the task of the jury. *See Hollifield,* 870 F.2d at 578; *Corley,* 824 F.2d at 937; *Browning,* 723 F.2d at 1546. We conclude that a jury could find that a conspiracy to launder money existed and that both Gilmore and Rogers knew about it and participated in it.

**Assault of a federal officer:** Appellant Tape was convicted of assaulting, resisting or impeding federal officer Boyer, an IRS agent (Count 9).

 Tape accosted Boyer, who was with his daughter at a toy store in Fort Myers in January 1988 about a year before the trial. Boyer had participated in the investigation of Tape, so they were previously acquainted. Tape spoke heatedly to Boyer at close range in the store, poked Boyer in the chest and spoke to Boyer in a way Boyer considered threatening.[7]

 Appellant argues that the conviction must be reversed because the encounter occurred outside the scope of Boyer's official duties. As the government points out, however, an assailant violates the statute by assailing an officer *on account* of the official's activities, even if not during the performance of them.[8] *See United States v. Fernandez,* 837 F.2d 1031, 1035 (11th Cir.), *cert. denied,* 488 U.S. 838, 109 S.Ct. 102, 102 L.Ed.2d 78 (1988); *United States v. Ellsworth,* 647 F.2d 957, 963 (9th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2008, 72 L.Ed.2d 465 (1982); *United States v. Heck,* 499 F.2d 778, 792 (9th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974). Appellant knew Boyer was a federal agent from previous contact and repeatedly referred during the conversation to Boyer's role in the investigation.[9]

6. Witness Robert Tremaine, a contractor, described a part of the meeting:

> And he [Tape] indicated at that time that he was having some tax problems and that he didn't want additional property in his name and he was concerned that—my basic understanding was that the value of the building was going to far exceed the purchase price and that would enhance his income to the extent that he'd have to pick up some tax obligations he wasn't prepared to handle at that time.

7. Boyer testified:

> He got right up against me and we were *nose-to-nose and he poked me a few times on* my chest and said that, you know, it's all because of me. He said one day we'll meet again like this. We have met by accident this particular time and we'll meet again like this again and we'll resolve this thing man-to-man. And he said, 'What goes around comes around.'
> R12–61.

. . . .

> Q: Now, Agent Boyer, at this time did you feel threatened in any way?
> A: I definitely did.
> R12–63.

8. Section 111(a) reads: "Whoever (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in *or on account of* the performance of official duties ... shall be fined under this title or imprisoned not more than three years, or both." [emphasis added] 18 U.S.C. § 111 (1969 & 1990 Supp.).

9. Boyer testified that appellant had initially approached him by saying aloud: "Would you like to see the guy who broke into our house?" and later questioned Boyer about the search warrant Boyer had obtained for his residence. Appellant's statements revolved around his complaints about the investigation and Boyer's role in it.

Appellant also contends that the language and physical contact with Boyer were insufficient to establish a forcible assault under the statute. The statute may be violated, however, by minimal physical contact, *see, e.g., Fernandez,* 837 F.2d at 1035 (chasing and bumping into official); *United States v. Sommerstedt,* 752 F.2d 1494, 1496 (9th Cir.), *amended by* 760 F.2d 999 (9th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985) (jolting arm and shoulder); *United States v. Frizzi,* 491 F.2d 1231 (1st Cir.1974) (spitting) or even without the presence of any physical contact, *see, e.g., United States v. Walker,* 835 F.2d 983, 987 (2d Cir.1987) (forcible assault may be "established by proof of threats rather than by proof of actual touching"); *United States v. Mathis,* 579 F.2d 415, 418 (7th Cir.1978) (force or threat or force sufficient); *United States v. Bamberger,* 452 F.2d 696, 699 (2d Cir.1971), *cert. denied,* 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 585 (1972) (incidental touching or no touching); *Burke v. United States,* 400 F.2d 866, 867–68 (5th Cir.1968), *cert. denied,* 395 U.S. 919, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969) (affirming jury instruction that an "assault may be committed without actually touching, striking, or committing bodily harm to another.").

We recently interpreted this statutory section in a similar case. *Fernandez,* 837 F.2d 1031 (11th Cir.1988). In *Fernandez,* the appellant confronted an assistant United States Attorney named Shur outside the courthouse where appellant's brother had just been sentenced. The appellant bumped into Shur, complained heatedly about the sentence imposed on his brother, advised Shur to get someone to protect him, and several times said, "You better watch your back." *Fernandez,* 837 F.2d at 1033. This evidence was sufficient to allow a jury to find that the appellant had forcibly assaulted an officer. *Fernandez,* 837 F.2d at 1035. Here, appellant spoke threateningly to Boyer and poked him, which amounted to a comparable affront, both physical and verbal. Thus, a jury could

conclude appellant's conduct constituted sufficient force to find an assault under the statute.

## JUROR MISCONDUCT

■■■■■■ Appellant Tape argues that certain jurors slept during the presentation of testimony and that the trial court's failure to investigate after defense objections was an abuse of discretion that deprived Tape of his sixth amendment right to an impartial jury. The decision to investigate allegations of jury misconduct rests within the sound discretion of the district court. *United States v. Cousins,* 842 F.2d 1245, 1247 (11th Cir.), *cert. denied,* 488 U.S. 853, 109 S.Ct. 139, 102 L.Ed.2d 111 (1988); *United States v. Ayarza–Garcia,* 819 F.2d 1043, 1051 (11th Cir.), *cert. denied,* 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987) ("The trial court has broad discretion as to how to proceed when confronted with an allegation of jury misconduct, including discretion with regard to the initial decision as to whether to interrogate jurors."); *United States v. Darby,* 744 F.2d 1508, 1540 (11th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985); *United States v. Barshov,* 733 F.2d 842, 851 (11th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985). There is no per se rule requiring an inquiry in every instance of alleged misconduct. *United States v. Cuthel,* 903 F.2d 1381, 1382–83 (11th Cir.1990) (quoting *Barshov,* 733 F.2d at 851). "The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate." *Cuthel,* 903 F.2d at 1383 (*quoting United States v. Caldwell,* 776 F.2d 989, 998 (11th Cir.1985)).

■■■■ In this case, each time the defense objected to the inattention of certain jurors, the trial judge specifically found that no jurors had been asleep at trial.[10] In making this finding and declining to investigate further, the trial court was well within its discretion, as is firmly established in com-

---

10. "I'm perfectly satisfied that there wasn't a single juror that slept through any portion of this trial." R14–32.

parable cases in this circuit and others where defendants objected to jurors' sleeping. *See United States v. Key,* 717 F.2d 1206, 1209 (8th Cir.1983); *United States v. Holder,* 652 F.2d 449, 451 (5th Cir. Unit B 1981); *United States v. Bruton,* 647 F.2d 818, 826 n. 13 (8th Cir.), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981); *United States v. Curry,* 471 F.2d 419, 421–22 (5th Cir.), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973); *United States v. Carter,* 433 F.2d 874, 876 (10th Cir.1970). *But see United States v. Barrett,* 703 F.2d 1076, 1082–83 (9th Cir.1983) (failure to inquire an abuse of discretion, but distinguished from other cases in that juror himself, rather than the defense, notified the court that he had been sleeping). We further note that the trial court's exercise of discretion will not be disturbed absent a showing of bias or prejudice to the defendant, which appellant has not argued or proven. *Holder,* 652 F.2d at 451.

## MOTIONS TO SEVER

■ Appellants Rogers and Gilmore both claim the district court erred in denying their pre-trial motions for severance under Fed.R.Crim.P. 14.[11] Both appellants argued that they were only minor participants in the activities charged in the nine counts and that evidence against the other defendants in the joint trial prejudiced them. Rogers was indicted on Counts 7 (conspiracy to defraud the United States) and 8 (perjury). Gilmore was indicted on Counts 2 (conspiracy to possess with intent to distribute cocaine hydrochloride) and 7 (conspiracy to defraud the United States).

■ Defendants charged in a conspiracy are ordinarily tried together. *United States v. Morales,* 868 F.2d 1562, 1570–71 (11th Cir.1989); *United States v. Dorsey,* 819 F.2d 1055, 1058 (11th Cir.1987), *cert. denied,* 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988); *United States v.*

*Gonzalez,* 804 F.2d 691, 694 (11th Cir.1986), *reh'g denied,* 818 F.2d 871 (1987). We review a denial of a Rule 14 severance motion for abuse of discretion and will not reverse unless the resulting joint trial caused the defendant "compelling prejudice." *United States v. Broadwell,* 870 F.2d 594, 605 (11th Cir.), *cert. denied,* ⸻ U.S. ⸻, 110 S.Ct. 125, 107 L.Ed.2d 85 (1989); *United States v. LaChance,* 817 F.2d 1491, 1497 (11th Cir.), *cert. denied,* 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987); *United States v. Corbin,* 734 F.2d 643, 648 (11th Cir.1984). "It must be demonstrated that as a result of trying the defendants jointly, the jury was rendered incapable of independently evaluating the evidence against each defendant." *Corbin,* 734 F.2d at 650 (*citing United States v. Bright,* 630 F.2d 804, 813 (5th Cir.1980)). The prejudice must be "clearly beyond the curative powers of a cautionary instruction." *United States v. Alvarez,* 755 F.2d 830, 857 (11th Cir.), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985) (*quoting United States v. Phillips,* 664 F.2d 971, 1017 (5th Cir. Unit B 1981)). Rule 14 requires the trial judge to balance the defendant's right to be free from prejudice against efficient and economic administration of justice. *Dorsey,* 819 F.2d at 1058; *Alvarez,* 755 F.2d at 857.

Appellants claim the evidence presented on the counts with which they were not charged had a spillover effect and prejudiced them. Gilmore was not indicted for continuing criminal enterprise or assaulting a federal officer. Rogers was indicted for neither these nor the drug offenses. Rogers cites *United States v. McLain,* 823 F.2d 1457, 1467 (11th Cir.1987) for the proposition that a defendant should not be exposed to evidence of drug offenses with which he has not been charged. We have held, however, that a joint trial of such distinct offenses was proper. *See, e.g., Morales,* 868 F.2d at 1566 (defendant convicted of assaulting federal agent denied sever-

---

11. Rule 14 reads, in part:
 Relief from Prejudicial Joinder
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or informa-

tion or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .

ance from defendants convicted on drug charges); *Alvarez*, 755 F.2d at 857 (joint trial of defendants on separate murder and drug charges proper). Because conspiracy defendants are usually tried together, the simple fact that not all of the charges are directly related does not establish prejudice, particularly when Rogers, in addition to perjury, was charged and convicted of one conspiracy offense with other defendants and Gilmore of two conspiracy offenses.

A further problem with reliance on *McLain* is that it involved an appeal of joinder of defendants under Fed.R.Crim.P. 8(b).[12] The United States Supreme Court has noted that determinations under Rule 8 and Rule 14 are entirely separate:

> Rule 14's concern is to provide the trial court with some flexibility when a joint trial may appear to risk prejudice to a party; review of that decision is for an abuse of discretion. Rule 8(b), however, requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice; review on appeal is for an error of law.

*United States v. Lane*, 474 U.S. 438, 449 n. 12, 106 S.Ct. 725, 732 n. 12, 88 L.Ed.2d 814 (1986), *reh'g denied*, 475 U.S. 1104, 106 S.Ct. 1507, 89 L.Ed.2d 907 (1986); *Corbin*, 734 F.2d at 649.

However, the *Lane* holding itself decided that Rule 8 motions are subject to harmless error review on appeal. *Lane*, 474 U.S. at 449, 106 S.Ct. at 732. This raised the possibility that appeals of both Rule 8 and Rule 14 motions would require a similar showing of prejudice, although the *Lane* Court ex-

pressly declined to rule whether the showings were identical and indicated that they were still distinct.[13] Eleventh Circuit cases since *Lane* was decided in 1986 have kept Rule 8 and Rule 14 distinct. *See, e.g., United States v. Bryan*, 843 F.2d 1339, 1342 (11th Cir.1988); *Morales*, 868 F.2d at 1567; *United States v. Russo*, 796 F.2d 1443, 1450 (11th Cir.1986). A recent opinion noted, however, that "to some extent for appellate purposes the *Lane* case may have collapsed Rules 8(b) and 14" because both require a showing of some prejudice. *Morales*, 868 F.2d at 1571. *See also United States v. Fernandez*, 892 F.2d 976, 990 (11th Cir.1989), *cert. dismissed*, — U.S. ——, 110 S.Ct. 2201, 109 L.Ed.2d 527 (1990) ("Assuming without deciding that the same test [Rule 8 harmless error] applies for claims of misjoined defendants [prejudice under Rule 14]," and finding prejudice); *United States v. Sophie*, 900 F.2d 1064, 1085 (7th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990) (failure to demonstrate prejudice for Rule 8 indicates no severe prejudice for Rule 14); *United States v. Grey Bear*, 863 F.2d 572, 588 (8th Cir.1988) (en banc) (deciding whether joinder was both not prejudicial and was harmless error in same analysis) (Gibson, J., concurring), *cert. denied*, — U.S. ——, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990); C. Wright, *Federal Practice and Procedure, Criminal 2d*, § 145 at 529–30 (1982 & 1990 Supp.) (noting, before *Lane*, that applying harmless error to Rule 8 would duplicate prejudice inquiry of Rule 14).

---

**12.** Joinder of Defendants

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b).

Neither Rule 14 nor the *Lane* case, *infra*, are discussed in *McLain*. The court, however, specifically held that even if Rule 8 was not violated, the defendant was entitled to severance "if he can show specific and compelling prejudice

due to the counts being joined...." *McLain*, 823 F.2d at 1467 (citing two Eleventh Circuit cases dealing with both Rule 8 and Rule 14). The court specifically found that spillover evidence prejudiced the appellant and that the court had abused its discretion. *Id.*

**13.** "We need not decide whether the degree of prejudice necessary to support a Rule 14 motion for severance is identical to that necessary to require reversal for a Rule 8(b) error. Justice Stevens' partial dissent fails to recognize that the Rule 14 prejudice component involves a different inquiry from Rule 8 technical requirements." *Lane*, 474 U.S. at 449–50 n. 12, 106 S.Ct. at 732 n. 12.

Despite the possibility that *Lane* makes all Rule 8 appeals discussing harmless error also precedent for Rule 14 appeals discussing prejudice, we decline to blend the two. As *Morales* pointed out, although appeals of both rules require a showing of prejudice, Rule 14 still requires the more precise showing of "compelling prejudice," a standard often addressed in this circuit. *Morales*, 868 F.2d at 1570. As we have explicitly stated, "compelling prejudice" is more than some prejudice, as some degree of prejudice is inherent in every joint trial. *Morales*, 868 F.2d at 1572; *Alvarez*, 755 F.2d at 857, 858; *United States v. Staller*, 616 F.2d 1284, 1294 (5th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980). Thus, a Rule 8 case like *McLain*, even after *Lane*, cannot be authority for comparable prejudice in a Rule 14 case. We therefore must find specific instances of prejudice in the record and verdict to reverse a denial of Rule 14.

Both Rogers and Gilmore claim that the jury failed to assess their cases independently of the other defendants, as evidenced by the fact that it returned guilty verdicts on all nine counts after deliberating only four and a half hours, including lunch. This is a substantial claim because the jury found guilt on all counts, as opposed to the many cases in which we have held that split verdicts indicated that the jury considered the evidence carefully and refuted any allegation of "compelling prejudice." *See, e.g., United States v. Nixon*, 918 F.2d 895, 906 (11th Cir.1990); *Russo*, 796 F.2d at 1450; *United States v. Cole*, 755 F.2d 748, 762 (11th Cir.1985). Appellants claim that the jury could not have assessed a two-week trial involving five defendants, nine counts, 57 witnesses, and 250 exhibits in such time. In *United States v. Diaz–Munoz*, 632 F.2d 1330 (5th Cir. Unit B 1980), we reversed a denial of a Rule 14 motion because the conviction rested upon the jury's cumulation of the evidence. The trial lasted two weeks, and involved three defendants, 19 counts, and more than 200 exhibits, yet the jury returned verdicts of guilty in less than three hours, lunch included. "While we do not think cumulation alone is enough to estab-

lish prejudice, it is obvious that in this case misjoinder caused serious problems and substantial confusion at trial." *Id.* at 1337. The other factor in *Diaz–Munoz* was that joinder had also been improper under Rule 8, without which the court explicitly stated that trial court's denial of the Rule 14 motion might have been affirmed. *Id.* at 1336–37.

By contrast, in this case nothing but the time span of the jury deliberations and the alleged complexity of the case indicates the possibility of prejudicial confusion by the jury. Although of comparable complexity, *Diaz–Munoz* involved other indications of prejudice and specifically stated that the complexity of the case and the speed of deliberation alone would not constitute prejudice. *Id.* at 1337. We have never held that deliberations of a certain duration are required for a conviction to be considered free from prejudice under Rule 14. *See United States v. Meester*, 762 F.2d 867, 884 (11th Cir.), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985) (jury deliberations of nine hours indicated no prejudice). We also note that relatively short jury deliberations are an ambiguous indicator. Rather than indicating haste, it could also indicate strong evidence. In *United States v. Lane*, 584 F.2d 60, 65 (5th Cir.1978), the court found prejudice sufficient to satisfy Rule 14, and noted:

> Were the evidence of guilt of either defendant more clear, the prejudicial effect of their combined trial would be less compelling. The jury remained in deliberation, however, for over nine hours and at one point declared themselves deadlocked on both cases.

*Id.* Had the jury taken less time, the court presumably would have found the evidence was more convincing and the risk of prejudice proportionately less. *Cf. Morales*, 868 F.2d at 1572 (risk of prejudice is less when evidence is strong); *Bryan*, 843 F.2d at 1341 (same).

Neither have we held that a certain number of defendants makes a case prejudicially complex. *Meester*, 762 F.2d at 884 (five defendants); *Bryan*, 843 F.2d at 1341 (five); *United States v. Loyd*, 743 F.2d

1555, 1564 (11th Cir.1984) (five); *Bright,* 630 F.2d at 813 (seven). Nor a certain number of counts. *United States v. Nixon,* 918 F.2d 895, 895 & n. 1 (11th Cir.1990) (95 counts); *Broadwell,* 870 F.2d at 605 (21 counts); *United States v. Hammond,* 781 F.2d 1536, 1537 (11th Cir.1986) (116 counts). We have held that a denial of a Rule 14 motion was proper in cases considerably more complex than this one, although many of them were split verdicts. *See United States v. Kopituk,* 690 F.2d 1289, 1320 (11th Cir.1982), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983) (12 defendants, 70 counts, 130 witnesses, 22,000 pages of trial transcript, seven-month trial); *United States v. Martino,* 648 F.2d 367, 385 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982) (20 defendants, 35 counts, more than 200 witnesses, three-month trial) (*quoting United States v. Morrow,* 537 F.2d 120, 136 (5th Cir.1976)); *Phillips,* 664 F.2d at 1017 n. 68 (12 defendants, 407 overt acts, 36 counts, 12,000 pages of trial transcript, four-and-a-half-month trial). *See also United States v. Garner,* 837 F.2d 1404, 1413 (7th Cir.1987), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988) (178–page indictment, 348 alleged illegal acts, six-week trial); *Kopituk,* 690 F.2d at 1320 (large and complex trial alone does not establish prejudice); *United States v. Diez,* 515 F.2d 892, 904 (5th Cir.1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976) ("The complexity of a trial, by itself, is insufficient grounds for overturning a trial court's denial of a severance motion."). Furthermore, the complexity of a trial does not weigh unequivocally for prejudice because complex cases, if tried jointly, are likely to involve the most savings in judicial economy, the factor that is balanced against prejudice. *See Kopituk,* 690 F.2d at 1317–18; *Diez,* 515 F.2d at 904.

Moreover, we often have held that cautionary comments by the trial judge and the parties significantly reduce the risk of prejudice. *Morales,* 868 F.2d at 1571–72; *Meester,* 762 F.2d at 884; *Broadwell,* 870 F.2d at 594. In this case, both parties and the trial court informed the jury of its duty to evaluate the evidence separately for each count and each defendant.[14]

Thus, neither appellant has pointed to instances of "compelling prejudice" in the record. The trial was neither inordinately complex nor concluded by jury deliberations that were inordinately hurried. The jury was cautioned at several stages in the trial to assess the evidence independently for each defendant and each count, and nothing in the record suggests these warnings were not heeded. Therefore, we find that the denial of the Rule 14 motion to sever was not an abuse of discretion.

## TESTIMONY ON GUILTY PLEA

Appellants Rogers and Gilmore also argue that the trial court committed reversible error by allowing witness Hampton to testify about his guilty plea for the government in a way that prejudiced them on the drug conspiracy count (Count 2):

Q: And do you remember what you pled guilty to?

A: Conspiracy.

Q: With who? Who were the other conspirators?

A: With Ronnie Tape, Karen McCalvin, Rodney Gilmore, Ricky Rogers, Cassandra Hernandez, Napolean Rayner, Preston Towns, Archie Johnson, Rosa Lee Johnson and Larry White.

BARANOWICZ: Objection, Your Honor, and move to strike.

---

14. Prosecutor acknowledges Rogers not involved with drugs (R6–26–27); Rogers's lawyer echoes (R6–43); McCalvin's and Gilmore's lawyers stress separateness of charges (R6–33, 36, 37); court warns only to consider seized evidence against one, not all defendants (R10–261); Rogers's lawyer elicits testimony that seized evidence did not implicate Rogers (R10–285, 286); Gilmore's lawyer brings out that Gilmore was not at toy store during the alleged assault (R12–111); court submits separate summary sheet listing counts and defendants for jury in order to minimize prejudice from grouping by counts on verdict sheet, to which defense had objected (R14–13, 22, 23); court refers jury to the sheet (R15–23, 59); court's extensive cautionary instruction to consider counts and defendants separately. (R15–21–22, 60) (quoted in part at n. 16, *infra.*).

COURT: No. Overruled.

■ We review the trial court's evidentiary ruling for abuse of discretion. *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983), *reh'g denied,* 708 F.2d 734 (11th Cir.1983). In light of the court's denial of appellants' motions to sever, *supra,* we assume that the objection to the testimony is preserved for both Rogers and Gilmore, although only Tape's counsel, Baranowicz, objected at trial.[15] *See United States v. Lefkowitz,* 284 F.2d 310, 313 n. 1 (2d Cir.1960) (failure to object did not waive objection because codefendant's objection brought issue to judge's attention.)

■ In evaluating the use of a guilty plea, we must determine "whether the trial court abused its discretion when it balanced the probative value of this evidence against its potential unfairness." *United States v. Griffin,* 778 F.2d 707, 710 (11th Cir.1985). As was stated in *United States v. King,* 505 F.2d 602, 607 (5th Cir. 1974):

> One person's guilty plea or conviction may not be used as substantive evidence of the guilt of another. The introduction of a codefendant's guilty plea is permissible, however, when its use is limited to proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness' credibility.

*Id.* (citations omitted).

The *King* decision surveyed the law and laid out the test that has been followed in this circuit:

> Thus, a number of our cases—in fact, all but one—have declined to find plain error when the fact of a coconspirator's guilty plea was made known to the jury even though no cautionary instructions were given. In assessing King's assertion of plain error in this case, then, we must carefully examine all the facts and circumstances of the case in their proper context. The presence or absence of an

instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt.

*Id.* at 608 (footnotes omitted).

The *King* test has been applied in this circuit to allow a witness or codefendant's guilty plea before the jury when the prosecution's purpose was to rehabilitate the witness's credibility, the defense invited the admission of the plea, and the government did not improperly emphasize it. Where no defense counsel objected in these cases, we have found no plain error. *See United States v. Vigliatura,* 878 F.2d 1346, 1348 (11th Cir.1989); *United States v. McLain,* 823 F.2d 1457, 1465–66 (11th Cir.1987); *United States v. Chilcote,* 724 F.2d 1498, 1503–04 (11th Cir.1984). We have also applied the *King* test to cases where the defense did object and have found no reversible error. *See United States v. Smith,* 893 F.2d 1269, 1272–73 (11th Cir. 1990); *United States v. Edwards,* 716 F.2d 822 (11th Cir.1983); *United States v. Jimenez–Diaz,* 659 F.2d 562, 566 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982). When the defense objects, however, and the government has emphasized the plea for no other reason than to prejudice the defendant, we have found reversible error. *See McLain,* 823 F.2d 1457 at 1466 (unredacted plea agreement of witness put into evidence).

---

**15.** The trial court may, but need not, order that the objection of one defendant will also apply to the other codefendants in order to save time. *See United States v. Salinas,* 601 F.2d 1279, 1282 n. 7 (5th Cir.1979); *Judge's Manual for the Management of Complex Criminal Jury Cases* § 2.3.1 (1982); The trial judge did not elect such a procedure in this case.

If no party had objected to the testimony, our resolution of the issue would be the same because we would review the district court's ruling under the more permissive standard of "plain error." Fed.R.Crim.P. 52(b).

Here the government questioned the witness for the proper purpose of bolstering his credibility. The defense invited the testimony because it had cross-examined other witnesses at length on their grants of immunity, guilty pleas and sentences and eventually cross-examined Hampton about his plea. Perhaps most telling, the government did not emphasize the plea or urge the jury to consider it. The government did not refer to the plea again in further testimony or in summation. Admittedly, there was no cautionary instruction by the trial court at the time the plea was mentioned, as in *Jimenez–Diaz* and *Edwards*, but *King* emphasized that jury instructions were to be considered along with the other factors. *King*, 505 F.2d at 608. The absence of contemporaneous instructions will not be reversible error, as long as the jury was instructed properly in the final charge. *Smith*, 893 F.2d at 1272.[16] Although a contemporaneous instruction to the jury may have been preferable, we cannot say the trial court abused its discretion by failing to give one.

## OTHER ISSUES

■ Appellant Gilmore argues that admission into evidence of a semi-automatic pistol identified as manufactured by Israeli Military Industries was unfairly prejudicial and should have been excluded under Fed. R.Evid. 403. The vehicle in which it was found was registered to Gilmore, and the gun was used as evidence for the drug conspiracy charge against Gilmore (Count 2). We hold that admission of the gun was not an abuse of discretion, as we have held in similar cases where guns were admitted into evidence as tools of the drug trade. *See United States v. Rodriguez*, 765 F.2d 1546, 1562 (11th Cir.1985) (citing cases). The trial judge minimized any prejudice by giving an immediate cautionary instruction when the gun was put into evidence, although he was not required to do so.[17] *Id.* at 1562 n. 20.

■ Gilmore also argues that the trial court erred in rejecting his motion at sentencing that he was entitled to a reduced sentence as a minor or minimal participant in the conspiracy under Sentencing Guidelines section 3B1.2.[18] The trial judge found that Gilmore "participated fairly substantially in the affairs of this enterprise." This finding was supported at trial by evidence of Gilmore's activity as a repeated drug seller and distributor with sellers

---

16. Neither appellant objected on the basis of Hampton's testimony to the trial court's final jury charge. Gilmore did not request a cautionary instruction and we have stated that when the defense did not request an instruction, it will not be plain error to admit the plea. *King*, 505 F.2d at 609 (quoting *United States v. Rothman*, 463 F.2d 488, 490 (2d Cir.1972)). Appellant Rogers, although not the party to object to the reference to the plea at trial, did request a specific final jury instruction. "And, of course, the fact that a witness has plead [sic] guilty to the crime charged in thes [sic] indictment is not evidence, in and of itself, of the guilt of any other person." Defense Requested Jury Instruction # 8 at 2. The requested instruction was at least partially reflected in the court's final instructions. "[Y]ou should analyze what the evidence in the case shows with respect to that individual and with respect to that count, leaving out of your consideration entirely any evidence admitted solely against another defendant. Remember that each defendant is entitled to have his case determined from evidence as to his or her own acts and statements and conduct."

17. "Members of the jury, I instructed you previously with respect to weapon possession, and I repeat the same instructions at this time." R10–169. The previous instruction involved the admission of another gun shortly before the pistol: "Members of the jury, with respect to this exhibit, the weapon is admitted for the limited purpose of showing intent and knowledge, but is not to be used by you as evidence of guilt of anybody in this case." R10–122.

18. The guidelines allow a trial judge to decrease the offense level by 4 levels for a minimal participant, 2 levels for a minor participant, and 3 levels for participants between the two. U.S. Sentencing Commission, *Guidelines Manual* § 3B1.2 (Nov.1990). Background for the provision reads: "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." *Id.* Whether to apply an adjustment "involves a determination that is heavily dependent upon the facts of the particular case." *Id.* These provisions have been in effect since the guidelines first became effective in November 1987.

working under him. The district court's finding was not clearly erroneous. *United States v. Sellers,* 906 F.2d 597, 605–06 (11th Cir.1990); *United States v. Taxacher,* 902 F.2d 867, 873 (11th Cir.1990), *reh'g denied,* 912 F.2d 1470.

 In the final claim, appellant Hernandez argues that her sentence under the guidelines violated her due process rights under the fifth amendment. She argues that prosecutors rather than judges effectively determine the sentence when they move, or fail to move, for a departure from the sentence formula.[19] We rejected this argument recently in a challenge to comparable sentencing provisions of the Anti-Drug Abuse Act of 1986 in *United States v. Musser,* 856 F.2d 1484, 1487 (11th Cir. 1988), *cert. denied,* 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989) (prosecutors may only move the court to adjust a sentence, a decision that remains with the trial court). *See also United States v. Chotas,* 913 F.2d 897, 901 (11th Cir.1990) (quoting with approval decisions rejecting constitutional challenges to section 5K1.1); *United States v. Castellanos,* 904 F.2d 1490, 1497 (11th Cir.1990) ("Thus, despite [5K1.1] com-

mentary's instruction to give weight to the government's assessment, the district court's discretion remains intact."); *United States v. Erves,* 880 F.2d 376, 379 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989) (rejecting substantive due process challenge to mandatory sentencing under the guidelines). We therefore join the other circuits that have rejected the argument as applied to the sentencing guidelines. *United States v. Spees,* 911 F.2d 126, 127 (8th Cir.1990); *United States v. Huerta,* 878 F.2d 89, 93–94 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990); *United States v. Ayarza,* 874 F.2d 647, 653 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990).

Accordingly, the judgment of the district court is AFFIRMED.

---

19. Upon a motion by the government, a court may depart downward from a sentencing range established by the guidelines. *See* U.S.S.G. § 5K1.1 (Nov.1990). Although commentary to *the section notes that "[s]ubstantial weight should be given to the government's evalua-*

tion...." it is clear from the guidelines that the final decision rests in the discretion of the sentencing judge. *Id.* "The appropriate reduction shall be determined by the court...."; "the court may depart from the guidelines...."; "the court's evaluation...." *Id.*