**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 99-4374

ZACHARIAH CLIFTON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DELANO DUBUISSON, a/k/a Delano
Alphonso Dubuisson, a/k/a Delano
Alfonso Dubuisson, a/k/a Delano
                                                                          No. 99-4546
Dubusson, a/k/a Delano Tudor,
a/k/a Duane Anthony Grimes, a/k/a
Duane Grimes, a/k/a John Guarles,
a/k/a John Curtis, a/k/a Delana
Dubuison, a/k/a Sammy David
Mclain,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 99-4547

MESHAN BELK,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-99-7)

Submitted: February 29, 2000

Decided: March 20, 2000

Before WILKINS, LUTTIG, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Anthony F. Reid, REID & REID, Alexandria, Virginia; Gregory E.
Stambaugh, Manassas, Virginia; Gregory B. English, ENGLISH &
SMITH, Alexandria, Virginia, for Appellants. Helen F. Fahey, United
States Attorney, Rebeca Hidalgo Bellows, Assistant United States
Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Zachariah Clifton, Delano Dubuisson, and Meshan Belk collec-
tively appeal their jury convictions and sentences on one count each
of conspiracy to possess with intent to distribute and to distribute fifty
grams or more of crack cocaine and five kilograms or more of

2

cocaine, in violation of 21 U.S.C.A. § 846 (West Supp. 1999), and conspiracy to import and to bring and possess on board an aircraft arriving in the United States five kilograms or more of cocaine, in violation of 21 U.S.C.A. § 963 (West Supp. 1999). The district court sentenced Dubuisson, Clifton, and Belk to 292 months, 188 months, and 121 months of imprisonment, respectively. Each defendant also was sentenced to five years of supervised release and ordered to pay the mandatory special assessments.

Defendants timely appealed, claiming that: (1) they were denied a fair trial by allegedly prejudicial comments made by the Government during trial and in rebuttal; (2) the district court erred in admitting into evidence business records reflecting wire transfers involving the defendants; (3) the district court clearly erred in setting the base offense level based on both crack and powder cocaine rather than solely on powder cocaine, erred in determining the amount of crack and powder cocaine attributable to Dubuisson, and erred in assessing a four-level increase for Dubuisson's role in the conspiracy; (4) the district court abused its discretion in denying Clifton's motion for a new trial based on the failure of the Government to timely disclose his post-arrest statements to authorities; and (5) the district court erred in denying defendants' motion for a new trial based on anonymous letters claiming extrajudicial contacts with jurors. For the reasons stated below, we affirm defendants' convictions and sentences.

Defendants' first claim is that the district court erred in denying their motions for mistrial, which were based upon three comments at trial by the Government. The first comment arose during cross-examination of witness Ishmael Sanchez, when counsel for Belk asked where Sanchez's family lived in Panama. The Government objected, stating, "I don't think this is -- It could be potentially dangerous and also -- I mean, I don't think we normally find out in any case where a family . . . ." J.A. 169. The district court sustained the objection; then, after Sanchez's cross-examination was complete, Dubuisson's counsel moved for a mistrial, asserting that the Government had obviously referred to Dubuisson as a drug dealer with the potential ability to inflict harm on Sanchez's family. The district court denied the motion, explaining that it is normal procedure not to disclose addresses of witnesses. The court indicated that it would consider giving a curative instruction to the jury, but before closing

3

argument, counsel for Dubuisson withdrew the request for a curative instruction. The second and third comments at issue here arose during the Government's rebuttal, when Dubuisson was described as a "purveyor of poison" and was attributed with "many aliases."

This court has applied a two-level analysis in reviewing allegations of prosecutorial misconduct during trial. In this regard, we must first determine whether the challenged remarks were improper; if so, then we must ascertain whether the improper remarks prejudicially affected the defendants' substantial rights such that the defendants were deprived of a fair trial. See United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998); United States v. Bennett, 984 F.2d 597, 608 (4th Cir. 1993).

We find no error in the district court's denial of the defendants' motions for a mistrial based on the prosecutor's comments. First, with respect to the Government's comment that it could be dangerous for the witness to provide his family's address, we note that the prosecutor made no direct reference to any of the defendants. In addition, the remark was isolated; it was not placed before the jury with the purpose of diverting their attention to extraneous matters; it did not mislead the jury; and the defendant now demanding a new trial rejected a curative instruction. See United States v. Bennett, 984 F.2d at 608; United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994).

Similarly, we find no error in the denial of a new trial based on the Government's comment that Dubuisson had many aliases. Among other things, the Government presented direct testimonial evidence showing that Dubuisson used two aliases and indirect documentary evidence that Dubuisson used at least four different names during the course of the conspiracy. Moreover, following the objection by Dubuisson's counsel at the time the comment was made, the prosecutor identified for the jury the two aliases that were supported by direct testimonial evidence. Because the evidence supported the Government's comment, and because the comment was clarified by the Government during rebuttal, there was no impropriety in the statement. See Wilson, 135 F.3d at 297.

Finally, we do not believe the Government's comment that Dubuisson was a "purveyor of poison" deprived the defendants of a fair trial.

4

At the outset, this comment did not mislead the jury because it was clear that the prosecutor was referring to Dubuisson as a dealer of cocaine and crack cocaine. In addition, the comment was not extensive, and there is no indication that the remark was intended to divert the jury's attention to extraneous matters. See Bennett, 984 F.2d at 608. Further, the defendant did not even request a curative instruction as to this comment. See Francisco, 35 F.3d at 120. Given these facts, and given that the district court instructed the jury that the arguments and statements of counsel are not evidence, we find that none of the prosecution's comments at issue affected the fairness of the defendants' trial. See Wilson, 135 F.3d at 297.

Defendants next contend that the district court erred in admitting into evidence business records reflecting wire transfers involving the defendants.[1] In this regard, we generally review the district court's admission of evidence for an abuse of discretion. See United States v. Chin, 83 F.3d 83, 87 (4th Cir. 1996).

Defendants argue that: (1) the bulk of the wire transfers involved transfers to or from persons unidentified at trial; (2) the probative value of this evidence was substantially outweighed by its tendency to be unfairly prejudicial; and (3) the evidence permitted the jury to speculate about the association between the records and the charged drug conspiracy. However, our review of the record reveals that the vast majority of the wire transfers admitted into evidence (in number and value) reflected Dubuisson or Rook[2] as the sender or recipient. Also, as the district court held in denying defendants' motion for mistrial, the wire transfers ultimately admitted into evidence were within the time frame of the charged conspiracy and related to the conspiracy. Under these circumstances, we find no abuse of discretion in the district court's admission of the wire transfer records.

_____

[1] While they did not object at trial to the admission of these records pursuant to Fed. R. Evid. 403, the defendants now argue that the admission of this evidence is subject to the "broadly deferential standard" accorded Rule 403 objections. See United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990).
[2] The trial evidence demonstrated that Carlos Rook was Dubuisson's main partner in this drug conspiracy.

5

Dubuisson next challenges the district court's finding that the base offense level attributable to him was thirty-six, and he claims that the court erred in applying the role in the offense increase set forth in U.S. Sentencing Guidelines Manual, § 3B1.1 (1998). Specifically, he disputes the findings that: (1) five-hundred grams or more of crack cocaine and five to fifteen kilograms of cocaine powder was attributable to him; and (2) he was an organizer and leader in the crack cocaine portion of the conspiracy.[3]

This court reviews the district court's findings regarding the quantity of drugs and the propriety of an offense increase for clear error. See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999). The Government is required to prove drug quantities by a preponderance of the evidence. Id. In determining the proper drug quantity for sentencing purposes, the district court may consider any relevant and reliable evidence, including co-conspirators' hearsay statements. Id. This court has upheld § 3B1.1 increases where the defendant exercised some element of control over the commission of the offense, see, e.g., United States v. Kincaid, 964 F.2d 325, 329 (4th Cir. 1992), and where the defendant was a major supplier of drugs for distribution and redistribution by and to other members of the conspiracy. See, e.g., United States v. Banks , 10 F.3d 1044, 1057 (4th Cir. 1993).

In relevant part, the evidence in this case demonstrated that when Ishmael Sanchez obtained the half-kilogram of crack cocaine from Rook in Washington, D.C., the drugs were initially in powder form and that Dubuisson arranged to have the cocaine powder converted to crack cocaine. In addition, one of Sanchez's incremental payments to Rook for the crack cocaine was paid directly to Dubuisson, at Rook's direction.

_____

[3] Essentially, while Dubuisson does not contest his leadership role in the powder cocaine aspects of the conspiracy, he claims that the crack cocaine related acts "largely involved the actions of Carlos Rook and Ishmael Sanchez" and that Dubuisson's limited involvement with crack cocaine could not reasonably be characterized as being at an organizational or leadership level. He further claims that any increase should have been based solely on the lower powder cocaine level provided for in the guidelines.

6

While Dubuisson claims that there is no evidence that the half-kilogram testified to by Sanchez was weighed and that this evidence is insufficient to support the district court's findings, we find this evidence is sufficient to establish, by a preponderance of the evidence, the drug quantities of which Dubuisson was found to be involved. See Randall, 171 F.3d at 210. Moreover, the defendant bears the burden to show that the information relied upon by the district court was unreliable or inaccurate, id. at 211, and Dubuisson's bald assertion that Sanchez' testimony was "sketchy" does not carry this burden.

Dubuisson also takes issue with the district court's reliance on the Presentence Report's assignment of five to fifteen kilograms of powder cocaine to him. The trial evidence demonstrated that Dubuisson gave Sanchez 2550 grams of powder cocaine to smuggle from Panama. In addition, Dubuisson gave Tracy McGee 2901 grams of cocaine in Panama, which was seized by authorities upon her return to the United States. Accordingly, we find that there was ample evidence to support the district court's conclusion that in excess of 500 grams of powder cocaine was properly attributable to Dubuisson.**4** Therefore, we find no clear error in the district court's adoption of a base offense level of thirty-six for Dubuisson.

We further affirm the district court's four-level increase of that base offense level, based on the finding that Dubuisson was an organizer and leader of a conspiracy involving five or more participants. Contrary to Dubuisson's claim on appeal, the increase was properly added to the base offense level. See United States v. Hartzog, 983 F.2d 604, 608 (4th Cir. 1993); USSG § 3B1.1.

Next, Clifton asserts that the district court abused its discretion in denying his motion for a new trial based on the failure of the Government to timely disclose his post-arrest statements. On the morning of trial, Clifton's attorney was made aware that the Government possessed a written report reflecting a statement Clifton made in which he confessed to dealing in street-level sales of illegal drugs in North Carolina during the time period of the charged conspiracy. Clifton's

_____

**4** This calculation does not take into account the unknown amounts of cocaine Dubuisson gave to Belk, Clifton, and McGee during the first successful smuggling trip.

7

lawyer maintains that the late disclosure of the incriminating evidence forced him to adopt a new trial strategy in the middle of trial and prevented his planned strategy of calling Clifton to testify. Clifton's lawyer also claims that the timely revelation of a prior incriminating statement would have aided his assessment of the case against Clifton and may have persuaded Clifton to plead guilty.

While the district court denied Clifton's motion to suppress, it held that the Government could not use the statement or its FBI witnesses relating to the statement in its case-in-chief. The court further ruled that a voluntariness hearing would be held, outside the presence of the jury, in the event that Clifton elected to take the stand. Clifton did not take the stand in his defense, and the incriminating post-arrest statement was never introduced into evidence. Then, following the verdicts, Clifton included this claim in his motion for a new trial.

We agree with the district court that there was no prejudice to Clifton, given that the Government was precluded from using the statement in its case-in-chief. The other facts surrounding this incident buttress our conclusion: (1) Clifton would have had another opportunity to have the statement suppressed had he decided to testify; and (2) he had the duration of the three-day trial to consider entering a guilty plea. Given these facts, we affirm the district court's denial of Clifton's motions to suppress and for a new trial arising from this incident.

Defendants' final argument on appeal is that the district court erred in denying their motions for a new trial based on two anonymous letters claiming extrajudicial contacts with jurors. **5** Following the trial of this case, the Government and the presiding district judge each received an unsigned letter purporting to be from a juror, alleging that the anonymous juror and another unnamed juror were approached on the second day of trial by an unfamiliar gentleman who "subtly" suggested that the defendants should be convicted.

We find no abuse of discretion in the district court's denial of the motion for a new trial on the ground of jury tampering. See United

_____

**5** Counsel for Belk also requested an investigation of the claim.

States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995) (citation omitted); United States v. Hernandez, 921 F.2d 1569, 1577 (11th Cir. 1991). Because the letters were anonymous and had not been delivered to any of the defense attorneys, the district court properly questioned their reliability, and in light of the unsubstantiated nature of the anonymous letters, we do not believe that the district court had any duty to further investigate the claims. See Hernandez , 921 F.2d at 1577.

Accordingly, we affirm the defendants' convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9