JOURNAL ENTRY and OPINION
{¶ 1} Ashraf Mohammad, a bouncer at the Basement, a bar in the Cleveland Flats, appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of felonious assault of Benjamin Danisek, a bar patron. On appeal, Mohammad contends that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence; that a remark of the court and jury misconduct deprived him of a fair trial; that he did not receive effective assistance of counsel; and that the court should have imposed community control sanctions instead of a prison term. After careful review of the record and applicable law, we conclude his contentions lack merit and we therefore affirm the judgment of the court.
 {¶ 2} The record here reveals that on February, 15, 2001, Danisek and a group of about 20 people traveled from Mentor, Ohio to the Flats. They arrived at the Basement around 11:00 P.M. That night, Danisek had a confrontation with Mohammad, a bouncer, and suffered a blow to his face, resulting in a fracture of a facial bone.
 {¶ 3} Thereafter, a grand jury indicted Mohammad for one count of felonious assault.
 {¶ 4} At trial, Danisek identified Mohammad to be the male who struck him. He testified that as he was leaving the bar, he bumped into a male, who turned around, gave him a dirty look, and started to yell at him, to which Danisek responded, "What the fuck is your problem?" Danisek testified that after he exited the door, he heard yelling behind him, and as he turned around, he saw the male yelling at him. Danisek again asked what his problem was. As Danisek testified, when he turned and walked on, he felt a blow to the left side of his face, which sent him to the ground. He stated that a police officer then came over and helped him up, and, after providing the officer with his identification, he left on his group's limo bus. He stated when the pain in his face did not subside, he sought medical attention at Hillcrest Hospital emergency room on February 19, 2001, three days after the incident.
 {¶ 5} Dr. Cassady testified that after examining Danisek on February 23, 2001, four days after his emergency room visit and, from the X rays and CAT scans taken at the emergency room, he determined that Danisek suffered a fracture of the maxilla bone on his face.
 {¶ 6} Cleveland police officer Charles Neidbalson, who worked as security at the Beach Club on the night of the incident, testified that while on the sidewalk outside the Basement, he saw Mohammad yell at Danisek, approach him close-fisted, and knock him to the ground. Mohammad then disappeared into the Basement; however, when he exited the bar later, Neidbalson arrested him.
 {¶ 7} Next, Cleveland police officer Ariel Rojas testified that after Mohammad's indictment, Mohammad approached him and asked him why the prosecutor had charged him with a felony instead of a misdemeanor and inquired whether his partner, Officer Neidbalson, would change his testimony about witnessing him striking Danisek.
The defense presented one witness, Arron Moore, a member in Danisek's group, who testified that he had seen Mohammad on the bus that evening and had asked him to leave. According to Moore, when Danisek learned of the confrontation, Danisek asked Moore to identify Mohammad. Moore further testified that Danisek then approached Mohammad, who was standing outside the bar door, grabbed him by the arm, and pushed the door of the bar shut to prevent Mohammad from reentering the bar. Moore stated that Mohammad jerked his arm to get away from Danisek, and shoved him to the ground.
 {¶ 8} Following trial, the jury returned a verdict finding Mohammad guilty of felonious assault, and thereafter, he requested a new trial alleging jury misconduct, which the court denied. The court then sentenced him to a three-year prison term, from which he now appeals, raising six assignments of error for our review. We consider his first and third assignments of error together. They state, respectively:
 {¶ 9} "THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION WHEN THE COURT DENIED THE MOTION FOR ACQUITTAL MADE BY THE APPELLANT, PURSUANT TO CRIM.R. 29, UPON THE CLOSE OF THE STATE'S CASE AND UPON THE CLOSE OF ALL EVIDENCE PRESENTATION IN THIS MATTER."
 {¶ 10} "THE JURY'S VERDICT FINDING APPELLANT GUILTY OF THE CHARGE OF ASSAULT WAS NOT SUPPORTED BY THE EVIDENCE, OR IN THE ALTERNATIVE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} Regarding his insufficiency claim, Mohammad argues that the state failed to establish the element of causing serious physical harm, an essential element of felonious assault, and therefore the court should have granted his Crim.R. 29 motion.
 {¶ 12} Crim.R. 29(A) states, in relevant part:
 {¶ 13} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 14} The test for sufficiency raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. In State v. Martin (1983), 20 Ohio App.3d 172, the court summarizes the standard of review for an insufficiency claim:
 {¶ 15} "* * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence."
 {¶ 16} Here, Mohammad contends that the state's own witness, Dr. Cassady, testified that Danisek's injury occurred on February 19, 2001, and therefore he claims the state's evidence failed to establish that he caused serious physical harm to Danisek.
 {¶ 17} Our review of Dr. Cassady's testimony reveals that he testified that he examined Danisek four days after his emergency room visit. On cross examination, however, apparently under the assumption that Danisek sought medical attention on the same day his injury occurred, he stated he saw Danisek on "the 23rd, four days after the injury." Consequently, when asked by defense counsel asked if "[T]hat would put the injury at February 19th," he answered affirmatively.
 {¶ 18} Our review of the record however reflects Danisek's testimony that he did not seek medical attention immediately after the incident but visited the Hillcrest Hospital emergency room three days later, on February 19, 2001. Thus, Dr. Cassady's testimony, considered in light of his mistaken assumption that Danisek visited the emergency room on the day of injury, is consistent with Danisek's testimony regarding the time of his injury. Viewing the evidence and inferences in the light most favorable to the prosecution, therefore, any rational trier of fact could have found all the essential elements of felonious assault beyond a reasonable doubt. Accordingly, the court did not err in denying Mohammad's Crim.R. 29 motion for acquittal.
 {¶ 19} We next consider Mohammad's claim that the jury's verdict is against the manifest weight of the evidence. Review of the claim involves a different test. In State v. Thompkins (1997), 78 Ohio St.3d 380, the court cited Martin for its summary of the standard of review for a manifest-weight claim:
 {¶ 20} "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 21} Furthermore, we are mindful that the weight of the evidence and the credibility of witnesses are primarily issues for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We also recognize that the jury is the sole judge of the weight of the evidence and the credibility of witnesses; it may believe or disbelieve any witness or accept part of what a witness says and reject the rest. State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 22} Here, Danisek's testimony of Mohammad yelling at him and then striking him at his face as he walked away from the Basement is corroborated by Officer Neidbalson's testimony that he saw Mohammad yelling at Danisek outside the bar and then punching him, knocking him to the ground. Although the defense's witness, Arron Moore, gave a different account of these events, Moore also stated that he observed Mohammad gave Danisek a "shove." Given the evidence contained in the record, therefore, we are not persuaded the jury clearly lost its way and created such a manifest miscarriage of justice that Mohammad's conviction must be reversed and a new trial ordered.
 {¶ 23} Based on the foregoing, we overrule these assignments of error.
 {¶ 24} The second assignment of error states:
 {¶ 25} "THE TRIAL COURT ERRED IN MAKING CERTAIN PREJUDICIAL COMMENTS TO THE JURY WHILE DELIVERING THE JURY INSTRUCTIONS, WITHOUT GIVING A PROPER CURATIVE INSTRUCTION."
 {¶ 26} Mohammad challenges the court's instruction to the jury on serious physical harm. The court stated, in relevant part:
 {¶ 27} "Serious physical harm to persons. Serious physical harm to persons means any of the following:
 {¶ 28} "* * *.
 {¶ 29} "Four, any physical harm which involved some permanent disfigurement, or which involves some temporary, serious disfigurement, such as in this case Benjamin Danisek's fractured left maxilla." (Tr. 517.)
 {¶ 30} The transcript reflects that immediately after completing its instruction on this element, the court further stated:
 {¶ 31} "To clarify number four, any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement, instead of saying such as in this case, I'm going to change that to State of Ohio contends Benjamin Danisek's fractured left maxilla meets number four as defined, okay. That's an issue of fact forthe jury to determine." (Emphasis added. Tr. 518.)
 {¶ 32} The record further reflects that after reading the entire jury instruction, the court held a side bar where both the prosecutor and defense counsel expressed concerns about the clarity of the instruction on the element of serious physical harm. At the request of counsel, the court read this element again in its entirety as corrected, stating:
 {¶ 33} "The court is going to read a part of the written jury instructions to you. I'm not attempting to highlight any portion of this charge, as you are to consider everything in this charge, but I'm going to read it again and let you know that I'm not trying to highlight this section." (Tr. 535.)
 {¶ 34} Following this comment, the court read the instruction on serious physical harm as follows:
 {¶ 35} "Now, serious physical harm to persons means any of the following:
 {¶ 36} "* * *.
 {¶ 37} "Four, any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement." (Tr. 536.)
 {¶ 38} The court also stated subsequently that:
 {¶ 39} "If during the course of the trial the Court has said or done anything that you consider an indication of my view on the case, you are instructed to disregard it during your deliberations." (Tr. 538.)
 {¶ 40} Thus, the record reflects that the court, after improperly suggesting that the victim's fractured maxilla could satisfy the element of serious physical harm as temporary serious disfigurement, gave an immediate curative instruction emphasizing that this issue concerned an issue of fact for the jury to determine. The court, furthermore, upon the request by defense counsel, read the entire instruction on this element after prefacing it with a caution that the jury should not unduly focus on this section. Finally, the court instructed the jury to disregard any indication of the court's view on any issues during its deliberations.
 {¶ 41} Additionally, we note that after the court corrected its charge, the record does not reflect an objection to the court's instructions thereby preserving this issue for appellate review. A party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict. See Crim.R. 30(A).
 {¶ 42} Given this state of the record, this assignment of error is not well taken and is overruled.
 {¶ 43} The fourth assignment of error states:
 {¶ 44} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS COUNSEL FAILED TO ADEQUATELY REPRESENT HIM AT TRIAL."
 {¶ 45} Mohammad complains that his counsel failed to call him to testify on his own behalf, failed to locate and produce other available witnesses to the incident, and failed to present a medical expert to rebut the state's medical expert.
 {¶ 46} To establish a claim of ineffective assistance of counsel, the record must demonstrate that trial counsel's performance fell below the objective standard of reasonable competence under the circumstances and there exists a reasonable probability that, but for such deficiency, the outcome of the trial would have been different. See Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2050; State v. Bradley
(1989), 42 Ohio St.3d 136. Furthermore, we are mindful that strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court. Strickland, supra. As the court stated in State v.Hutton (1990), 53 Ohio St.3d 36, citing Strickland:
 {¶ 47} "We `must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.' Especially on direct appeal, that presumption is not easily overcome. The record does not show counsel's thought processes, nor does it show a failure to `make reasonable investigations * * *.'" (Citationsto page numbers omitted.)
 {¶ 48} Here, the decision not to call Mohammad as a witness is within the range of professionally reasonable judgment and need not be analyzed.
 {¶ 49} Regarding the claim that counsel's performance fell below the standard of reasonable competence because he did not present defense's own medical expert and additional witnesses, we note the record contains evidence that Daniesk suffered a blow by Mohammad to the left side of his face on the early morning of February 16, 2001, and that the hospital charts from his emergency room visit three days later showed he suffered a fracture of the left maxilla bone. In light of this evidence, we are not persuaded that counsel's failure to present additional witnesses fell below the objective standard of reasonable competence, and Mohammad fails to demonstrate a reasonable probability that, but for these deficiencies, the outcome of the trial would have been different. Accordingly, this assignment of error is overruled.
 {¶ 50} His fifth assignment of error states:
 {¶ 51} "APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL PURSUANT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND THE CONSTITUTION OF THE STATE OF OHIO WHEN THE TRIAL COURT DID NOT DECLARE A MISTRIAL, OR, IN THE ALTERNATIVE, CONDUCT AN INVESTIGATION INTO THE POSSIBILITY OF JUROR MISCONDUCT RELATING TO A JUROR WHO FAILED TO TRUTHFULLY ANSWER QUESTIONS DURING VOIR DIRE."
 {¶ 52} Mohammad asserts that jury misconduct deprived him of a fair trial; in particular, he alleges that a juror had prior knowledge of the bouncers' activities at the Basement but did not volunteer that information at his voir dire. He maintains the court should have granted him a new trial or should have at least conducted an investigation into his allegations.
 {¶ 53} Regarding this complaint, the transcript reflects that when defense counsel initially addressed the jury as a group, he stated the following:
 {¶ 54} "Okay. I believe a lot of you already indicated you are familiar with the Flats and it's an entertainment district. There are restaurants and bars. Anybody who is not at all familiar with the Flats?"
 {¶ 55} The transcript reflects that "a juror" answered negatively to that question. The transcript then reflects the following colloquy during the voir dire of Juror Number 1:
 {¶ 56} "The COURT: * * * Anything you need to bring to the Court's attention?
 {¶ 57} "MR. TICHY: No. I've been to the Basement, but before it was the Basement, so that was probably ten years ago.
 {¶ 58} "THE COURT: Anything else you need to tell us about?
 {¶ 59} "MR. TICHY: No, nothing that I feel is conflicting in any way.
 {¶ 60} "THE COURT: Can you be fair just and impartial and listen to the evidence and render a verdict accordingly?
 {¶ 61} "MR. TICHY: Yes. I can." (Tr. 122.)
 {¶ 62} Following this, defense counsel inquired of Juror Number 1 what he experienced at his visit to the bar and also other matters not related to the bar. He then indicated to the court that he passed this juror for cause.
 {¶ 63} The record then reflects that the day after the jury rendered its verdict, defense counsel addressed the court and reported that, the day before, the jury foreman had telephoned him to inform him of his conversation with Juror Number 1 on the elevator after the verdict had been rendered. Defense counsel stated the following to the court:
 {¶ 64} "He [the foreman] indicated to me that Juror Number 1, a man, I believe, whose name is Tichy, while on the elevator, after all of the proceedings, coming downstairs and leaving, indicated to Mr. Pope [the foreman] and, I believe, another juror, that he, indeed was familiar with the Basement, and had been there and was familiar with the fact that the bounser [sic] at the Basement, in fact, body slammed, to use his words, patrons into tables, causing them physical injuries." (Tr. 554.)
 {¶ 65} Based on this allegation, defense counsel requested the court to declare a mistrial or to conduct an investigation. The court denied these requests but asked counsel to submit motions and present case law for the court's consideration. Mohammad subsequently filed a Crim.R. 33(A)(2) motion requesting the court to declare a mistrial and order a new trial, to which he attached an affidavit by the jury foreman. That affidavit stated, in relevant part:
 {¶ 66} "Affiant further states that after deliberations and verdict were complete and after discussion of the case with the Judge and lawyers, the said Juror Number 1 Tichy declared, to Affiant's astonishment, that Juror Number 1, Tichy, indeed, was aware of the activities occurring at the Basement as well as the bouncers at the Basement having a habit of body slamming customers into tables unnecessarily during disturbances."
 {¶ 67} In Cunningham v. St. Alexis Hosp. Med. Ctr. (2001),143 Ohio App.3d 353, we reiterated the proper standard of review for a claim of jury misconduct:
 {¶ 68} "As a reviewing court, we show deference to the trial judge, who sees and hears the events and thus is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry. * * * Therefore, we employ an abuse-of-discretion standard and will not reverse the trial court unless it has handled the alleged juror misconduct in an `unreasonable, arbitrary, or unconscionable' manner." (Citations omitted.)
 {¶ 69} In reviewing Mohammad's claim of jury misconduct, we note that Mohammad has not alleged that Juror Number 1 exercised undue influence over other jurors or otherwise committed misconduct during the jury deliberations. Thus, this matter is outside of the scope of Evid.R. 606(B),[1] which governs the competency of a juror to testify regarding matters or statements made during the course of the jury's deliberations. Accordingly, we are not precluded by Evid.R. 606(B) from considering the jury foreman's affidavit in our review of whether the court abused its discretion in denying Mohammad's motion to grant a new trial.
 {¶ 70} Next, we note that the only juror misconduct Mohammad complains of consists of Juror Number 1's alleged "concealment" of his prior knowledge, during the voir dire, of the bouncers' activities at the bar.
 {¶ 71} In a claim of jury misconduct which involves a juror's concealment of information, the defendant must demonstrate that the jury member was not impartial. See State v. Williams, 79 Ohio St.3d 1,1997-Ohio-407. Furthermore, a court may infer bias if it finds deliberate concealment; however, if the concealment was unintentional, the appellant must show that the juror was actually biased. Id.
 {¶ 72} Finally, we recognize that every juror comes into the deliberative process with his or her own personal experiences which may or may not provide a slight extraneous influence on a juror's view of any given set of facts. Gault v. Poor Sisters of St. Frances Seraph of thePerpetual Adoration, Inc., (C.A.6, 1967), 375 F.2d 539.
 {¶ 73} In the instant case, during the voir dire, Juror Number 1 told the court he had been to the bar many years ago before it was known as the Basement. Defense counsel thus was made aware that this venireman had been to the facility where the incident took place. The record indicates that the court afforded counsel ample opportunity to further question this juror about his familiarity of the Flats area or the Basement in particular. Counsel, however, never directly asked him if he had any knowledge of the bouncers' activities there. Without being asked specifically, the juror had no duty to elaborate.
 {¶ 74} Furthermore, the record reflects that the foreman's affidavit only alleges that Juror Number 1 told him he knew about the bouncers' conduct there; the affidavit did not state that the juror had personally observed any such conduct by the bouncers. Therefore, the juror's statement during the voir dire and what he allegedly told the foreman after the proceedings are not inconsistent. Thus, the record, read in its entirety, does not reflect deliberate concealment.
 {¶ 75} Without the demonstration of deliberate concealment, Mohammad must then show that Juror Number 1 was actually biased.Williams, supra. There are no allegations that this juror had made any prejudicial remarks during the deliberation process or otherwise manifested any bias in any manner. As each juror is entitled to bring his or her own life experience into the deliberation process, the juror's knowledge of the bouncers' activities at the bar unrelated to this instant case or this particular bouncer, without more, does not automatically give rise to an inference that he was biased in his consideration of the evidence presented in this case.Accordingly, we conclude the trial court did not abuse its discretion in denying Mohammad's motion for a new trial.
 {¶ 76} Regarding his complaint that the court failed to conduct further investigation into this matter, as noted above, Evid.R. 606(B) does not prevent the court from conducting an evidentiary hearing on his allegation of jury misconduct. However, there is no per se rule requiring an inquiry in every instance of alleged juror misconduct. State v.Sanders, 92 Ohio St.3d 245, 2001-Ohio-189, citing United States v.Hernandez (C.A.11, 1991), 921 F.2d 1569, 1577. As the record contains the foreman's signed affidavit describing the extent of the alleged misconduct by Juror Number 1, we conclude the court did not abuse its discretion in not holding an evidentiary hearing or conduct further investigation into this matter.
 {¶ 77} Accordingly, we reject this assignment of error.
 {¶ 78} Mohammad's sixth assignment of error states:
 {¶ 79} "THE TRIAL COURT ERRED BY IMPOSING A PRISON SENTENCE ON APPELLANT WHEN IT APPEARS THAT COMMUNITY CONTROL SANCTIONS WOULD BE APPROPRIATE."
 {¶ 80} Mohammad contends that the court should have imposed community control sanctions instead of a prison term.
 {¶ 81} Felonious assault, as a second degree felony, carries a presumption that a prison term is necessary. See R.C. 2929.13(D). Despite this presumption, R.C. 2929.13(D) permits a court to impose community control sanctions instead if it makes both findings that (1) a community control sanction would adequately punish the offender and protect the public from future crimes because the applicable R.C. 2929.12 factors indicating a lesser likelihood of recidivism outweigh the factors indicating a greater likelihood of recidivism; and that (2) a community control sanction would not demean the seriousness of the offense, because one or more R.C. 2929.12 factors indicating that the offender's conduct was less serious than conduct normally constituting that offense are applicable, and they outweigh the applicable factors indicating the offender's conduct was more serious than conduct normally constituting the offense. R.C. 2929.13(D)(1) and (2).
 {¶ 82} Here, the transcript reflects that before imposing a prison term in this case, the court considered the applicable R.C. 2929.12(B) seriousness and recidivism factors. It emphasized, among other factors, Mohammad's two prior convictions of similar offenses against patrons of the same nightclub, and his lack of remorse for the harm he caused the victim. The court also found that he did not respond favorably to past non-prison sanctions, as evidenced by his failure to pay court costs as ordered by the court in connection with his prior convictions. After reviewing the statutory factors, the court stated:
 {¶ 83} "Consequently the Court finds that after weighing these factors, a prison term must be imposed here in order to adequately protect the public and to punish the defendant. And because of the more serious factors and the recidivism likely factors outweighing the less serious, and the less recidivism factors as coined in the sentencing guidelines. Further, not to impose a prison term would demean the seriousness of the offense caused by the defendant. Especially in light of the defendant's past conviction[s] involving physical harm to others. And those other people being patrons of the Basement nightclub in which the defendant was a security guard at that time." (Tr. 643-644.)
 {¶ 84} Thus, the record reflects that the court considered the pertinent statutory factors in deciding that Mohammad failed to overcome the statutory presumption of a prison term for his felonious assault conviction. Accordingly, we overrule this assignment of error.
 {¶ 85} On the basis of the foregoing, the judgment of the court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] {¶ a} Evid.R. 606(B) provides:
{¶ b} "Upon an inquiry into the validity of a verdict * * *, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented."